[No. 27683-0-III.   Division Three.   July 13, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. JORGE ARIEL SAENZ, *Appellant*.

---

[2] Appellant's Br. at 40.

*Tanesha L. Canzater*, for appellant.

*James P. Hagarty*, *Prosecuting Attorney*, and *Kevin G. Eilmes*, *Deputy*, for respondent.

¶1 KULIK, C.J. — A jury found Jorge Saenz guilty of two counts of first degree assault and one count of unlawful possession of a firearm. Mr. Saenz appeals, asserting that evidence of gang affiliation and witness intimidation should not have been allowed under ER 404(b). He also asserts the State presented insufficient evidence to support his convictions. The State cross appeals, contending the trial court erred by not sentencing Mr. Saenz under the Persistent Offender Accountability Act (POAA), RCW 9.94A.555. We conclude sufficient evidence supports the convictions, and we affirm the convictions. We reverse the trial court's conclusion that the POAA did not apply. Here, unlike *State v. Knippling*, 166 Wn.2d 93, 206 P.3d 332 (2009), Mr. Saenz agreed to declination and waived in writing his right to a hearing. We, thus, accord his prior conviction the same status as any other prior conviction for a most serious offense.

## FACTS

¶2 During the evening of January 10, 2008, Jorge Saenz and Pedro Godinez began arguing in the Walmart in Sunnyside, Washington. Brandon Gonyier observed the interaction. Mr. Godinez is Mr. Gonyier's uncle. Both were 15 years old at the time of the altercation. Mr. Godinez and Mr. Gonyier belonged to a gang known as the Lower Valley Locos. Mr. Saenz was a known member of the rival gang, the Bell Garden Locos (BGLs). Mr. Gonyier testified that Mr.

Saenz threatened Mr. Gonyier and Mr. Godinez and told them they better watch their backs.

¶3 Mr. Godinez and Mr. Gonyier left Walmart and headed toward Mr. Gonyier's house. They walked through a parking lot. When Mr. Godinez and Mr. Gonyier were in front of Ace Hardware, a Dodge Dakota pickup truck pulled into the parking lot. A man, later identified as Mr. Saenz, got out of the front passenger side of the pickup. Mr. Gonyier testified that he heard a voice yell "BGL," and that he recognized the voice as Mr. Saenz's voice. Report of Proceedings (RP) at 86. Mr. Saenz started firing a gun at Mr. Godinez and Mr. Gonyier. Mr. Saenz shot Mr. Godinez in the back. Mr. Gonyier tried to enter the Ace Hardware store, but he fell and hit his head on the glass door, shattering the glass. Mr. Gonyier and Mr. Godinez entered the Ace Hardware to avoid the gunfire. Mr. Gonyier identified Mr. Saenz as the man from the Walmart altercation as well as the shooter in the Ace Hardware parking lot.

¶4 A few days later, a Sunnyside police officer received a telephone call from a woman who stated that when she went to visit her son at her sister's house, she overheard David Guillen bragging about the shooting. This caller stated that she had the gun used in the shooting. She delivered the gun to the police.

¶5 Mr. Guillen accepted a deal in exchange for his testimony against Mr. Saenz. Mr. Guillen testified that Mr. Saenz called him for a ride. Mr. Guillen picked up Mr. Saenz in the Walmart parking lot in his Dodge Dakota pickup truck. Mr. Guillen stated that Mr. Saenz saw two people walking, and he told Mr. Guillen to go toward them so Mr. Saenz could "hit them up."[1] Mr. Guillen drove into the parking lot by Ace Hardware, and Mr. Saenz got out of the vehicle and started shooting at the two people—Mr. Godinez and Mr. Gonyier.

¶6 The State charged Mr. Saenz with two counts of first degree assault and one count of unlawful possession of a

---

[1] "Hit them up" is street language meaning "to ask them who are you or where are you from." RP at 487.

firearm. During pretrial motions, the State sought the admission of evidence of Mr. Saenz's gang affiliation under ER 404(b). The court found that three detectives had specific knowledge of language, formation, affiliation, and overall gang structure. The trial court allowed the detectives to testify regarding gangs and gang activity to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident.

¶7 The State also sought the admission of evidence of witness intimidation within the jail under ER 404(b). The trial court found that both Mr. Saenz and Mr. Guillen were arrested and placed in the Yakima County jail. Sometime between January 2008 and July 2008, Mr. Saenz sent messages to Mr. Guillen telling Mr. Guillen to take the blame for the alleged crimes because he would serve less time than Mr. Saenz. Mr. Saenz also indicated that Mr. Guillen and his family would be harmed if Mr. Guillen did not take the blame for the alleged crimes.

¶8 In June 2008, Mr. Guillen was assaulted by a group of inmates who indicated they were sending a message to him. Mr. Saenz did not directly participate in the assault, and his name was not mentioned in connection with the message. Mr. Guillen testified that he assumed Mr. Saenz sent the message. The trial court allowed the evidence regarding witness intimidation to show guilty knowledge by Mr. Saenz of the alleged crimes and participation in those crimes.

¶9 A jury convicted Mr. Saenz of two counts of first degree assault and one count of unlawful possession of a firearm. The State asserted that Mr. Saenz was a persistent offender and should be sentenced to life in prison without the possibility of parole. The trial court disagreed, entering the following findings of fact: Mr. Saenz was convicted of two counts of second degree assault with a deadly weapon on December 3, 2003. Mr. Saenz was 18 years old at the time he committed the assaults. Mr. Saenz was charged with multiple crimes, including three counts of second degree

assault in the Lewis County Juvenile Court on February 3, 2001, when Mr. Saenz was 15 years old.

¶10 Mr. Saenz signed an agreed stipulation declining juvenile jurisdiction and specifically waived the requirement of a declination hearing. He also expressly waived his right to a hearing within 14 days in a colloquy with the court. Mr. Saenz was represented by counsel at all times and discussed declination with his counsel. A Lewis County commissioner approved the stipulation but did not make any findings regarding declination of juvenile court jurisdiction or the waiver of juvenile jurisdiction signed by Mr. Saenz. Mr. Saenz pleaded guilty to second degree assault and custodial assault in Lewis County Superior Court.

¶11 The trial court concluded that Mr. Saenz's Lewis County conviction did not qualify as a most serious offense for purposes of the POAA because there was no express waiver of juvenile court jurisdiction by Mr. Saenz and there were no express findings by the juvenile court regarding waiver of the juvenile court's jurisdiction. Because the trial court concluded that the Lewis County conviction did not qualify under the POAA, Mr. Saenz was sentenced to a total of 441 months' confinement.

¶12 Mr. Saenz appeals, asserting the trial court erred by allowing the State to present evidence of gang affiliation and witness intimidation. The State cross appeals, asserting the trial court erred by denying its motion to sentence Mr. Saenz as a persistent offender.

## ANALYSIS

¶13 *ER 404(b).* Mr. Saenz asserts that the trial court erred by admitting evidence of gang affiliation and witness intimidation. Washington courts have repeatedly held that gang affiliation evidence is admissible as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See State v. Yarbrough*, 151 Wn. App. 66, 210 P.3d 1029 (2009); *State v. Boot*, 89 Wn. App. 780, 950 P.2d 964 (1998); *State v. Campbell*, 78 Wn. App. 813, 901 P.2d 1050 (1995).

■ ¶14  The decision to admit evidence under ER 404(b) is reviewed for an abuse of discretion. *State v. Stenson*, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997). The trial court abuses its discretion if its decision is based on manifestly unreasonable or untenable grounds. *State v. Stein*, 140 Wn. App. 43, 65, 165 P.3d 16 (2007).

¶15  "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. Relevant evidence is admissible; irrelevant evidence is not admissible. ER 402.

■ ¶16  Relevant evidence may be excluded if its probative value is substantially outweighed by its prejudicial effect. ER 403. Evidence of prior bad acts is not admissible to show that the person acted in conformity on a particular occasion but is admissible for other purposes such as "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b). Before a court admits such evidence it must

> (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect.

*Yarbrough*, 151 Wn. App. at 81-82.

¶17  Here, the State sought to admit evidence that Mr. Saenz was a gang member to show motive, intent, opportunity, and res gestae. At trial, defense counsel did not object to admission of gang evidence for these purposes. Instead, counsel expressed concern that he did not want the evidence presented to turn into bad character evidence based on Mr. Saenz's gang membership. The prosecutor agreed, stating that he did not plan to elicit character evidence to show conformity therewith and that he actually believed that kind of evidence would weaken its case against Mr. Saenz.

■ ¶18 The trial court found that the State established by a preponderance of the evidence that Mr. Saenz was a gang member, his street name was Spooky, and he associated with other gang members who displayed certain colors and signs of their membership in a gang, and that the State sought to introduce this evidence to establish motive, intent, opportunity, and res gestae for the charged crimes. The trial court carefully weighed whether the evidence was relevant to prove an element of the crime charged and determined that the gang evidence was relevant to show whether the shooting was intentional or accidental. The trial court weighed the probative value against the prejudicial effect of admitting gang evidence and concluded that the probative value was much greater than the prejudicial impact. The trial court did not abuse its discretion by admitting the gang evidence.

■ ¶19 Similarly, the trial court did not err by admitting evidence of witness intimidation. The trial court heard testimony from five people regarding jailhouse communication and the assault on Mr. Guillen. The communication challenged involved Mr. Saenz using sign language between tanks to threaten Mr. Guillen into taking the blame for the crime. Subsequently, Mr. Guillen was assaulted and told that "word was sent over." RP at 592. Mr. Guillen testified that he assumed the word was sent over by Mr. Saenz.

¶20 The trial court found that both the communication and the assault occurred. The trial court admitted the evidence to show Mr. Saenz's knowledge. The court found the evidence was an admission relevant to prove the crime charged. The trial court again weighed the probative value against the prejudicial effect of admitting this evidence and ultimately concluded that the evidence had "extreme probative value" that outweighed the potential prejudice. RP at 566.

¶21 The trial court properly admitted both the gang evidence and the evidence of witness intimidation.

■■ ¶22 *Sufficient Evidence.* The test for sufficiency of the evidence is whether, when all reasonable inferences are

drawn in favor of the State, any rational trier of fact could find guilt beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). When an appellant asserts insufficient evidence, he or she admits the truth of the State's evidence, as well as all reasonable inferences that can be drawn from that evidence. *Id.* Credibility determinations are for the trier of fact and are not subject to review. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

¶23 Mr. Saenz was convicted of two counts of first degree assault with a deadly weapon and one count of unlawful possession of a firearm. Mr. Saenz asserts the State presented insufficient evidence to support his convictions. Defense counsel asserts insufficient evidence for all three of Mr. Saenz's convictions but fails to provide any argument regarding the unlawful possession of a firearm conviction. Therefore, we do not address the unlawful possession of a firearm conviction.

¶24 To prove first degree assault, the State must prove beyond a reasonable doubt that the defendant, "with intent to inflict great bodily harm: (a) Assaults another with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death." RCW 9A.36.011(1). "Great bodily harm" is defined as "bodily injury which creates a probability of death, or which causes significant serious permanent disfigurement, or which causes a significant permanent loss or impairment of the function of any bodily part or organ." RCW 9A.04.110(4)(c).

¶25 Here, Mr. Gonyier testified that he was with Mr. Godinez and that he observed the interaction between Mr. Godinez and Mr. Saenz in the Walmart. Mr. Gonyier testified that Mr. Saenz shot at him. Mr. Gonyier identified Mr. Saenz as the person who spoke with Mr. Godinez, as well as the person who shot at him. Mr. Gonyier testified that Mr. Saenz got out of the front passenger side of the vehicle.

¶26 Mr. Guillen testified that he entered into a plea agreement in exchange for testifying against Mr. Saenz. Mr. Guillen picked up Mr. Saenz at the Walmart parking lot. Mr.

Guillen testified that Mr. Saenz saw two people walking and told Mr. Guillen to drive toward the people so Mr. Saenz could hit them up. Mr. Guillen pulled into the parking lot, and Mr. Saenz got out of the truck before Mr. Guillen could park it. Mr. Guillen remembered hearing gunshots from beside his truck. When asked if there was any doubt in his mind that Mr. Saenz was the shooter, Mr. Guillen replied, "No." RP at 490.

¶27 Credibility determinations are for the trier of fact. Based on the testimony of Mr. Godinez, Mr. Gonyier, and Mr. Guillen, a rational juror could find that Mr. Saenz intended to inflict great bodily harm and that he assaulted another with a firearm. The State presented sufficient evidence to convict Mr. Saenz of two counts of first degree assault with a deadly weapon.

¶28 *Persistent Offender.* The State asserts the trial court erred by not sentencing Mr. Saenz under the POAA. The trial court declined to sentence Mr. Saenz under the POAA because the court was not satisfied that his criminal history contained two prior convictions of most serious offenses.

¶29 "[A] persistent offender shall be sentenced to a term of total confinement for life without the possibility of release." RCW 9.94A.570. A "persistent offender" is defined as an offender who

(a)(i) Has been convicted in this state of any felony considered a most serious offense; and

(ii) Has, before the commission of the offense under (a) of this subsection, been convicted as an offender on at least two separate occasions . . . of felonies . . . considered most serious offenses.

Former RCW 9.94A.030(33) (2006).

¶30 "Most serious offense" is defined as any class A felony, as well as second degree assault. Former RCW 9.94A.030(29)(a), (b). Mr. Saenz was convicted of second degree assault, a most serious offense, committed on August 30, 2003. Neither party contests that this conviction is considered one strike under the POAA.

¶31 An "offender" is

a person who has committed a felony established by state law and is eighteen years of age or older or is less than eighteen years of age but whose case is under superior court jurisdiction under RCW 13.04.030 or has been transferred by the appropriate juvenile court to a criminal court pursuant to RCW 13.40.110.

Former RCW 9.94A.030(31).

¶32 The juvenile court has jurisdiction over all offenders under the age of 18, with a few exceptions. RCW 13.04.030. The juvenile court must hold a declination hearing if the respondent is 15, 16, or 17 years of age and is charged with a class A felony. A party can waive his or her right to a declination hearing. Former RCW 13.40.110(1)(a) (1997). Following a declination hearing, the court is required to make written findings supported by relevant facts and opinions produced at the hearing. Former RCW 13.40.110(3).

¶33 On December 29, 2000, Mr. Saenz committed second degree assault. At that time, he was 15 years old. The Lewis County Prosecutor's Office filed a motion for declination of juvenile court jurisdiction. Mr. Saenz signed an agreed stipulation transferring the case to the Lewis County Superior Court and declining juvenile court jurisdiction. A Lewis County commissioner approved the stipulation and transfer but did not make any findings regarding declination of the juvenile court's jurisdiction or the waiver by Mr. Saenz of juvenile court jurisdiction. Mr. Saenz pleaded guilty to second degree assault in Lewis County Superior Court.

¶34 RCW 13.40.140(9) states, "Waiver of any right which a juvenile has under this chapter must be an express waiver intelligently made by the juvenile after the juvenile has been fully informed of the right being waived."

¶35 The State bears the burden of showing the predicate offenses qualify as strikes under the POAA by a preponderance of the evidence. *In re Pers. Restraint of Cadwallader*, 155 Wn.2d 867, 876, 123 P.3d 456 (2005).

¶36 The trial court concluded that the second degree assault conviction out of Lewis County did not qualify as a most serious offense under the POAA because there was no record of either a valid express waiver of juvenile court jurisdiction by Mr. Saenz or any express findings by the court regarding waiver of juvenile court jurisdiction and remand to adult court.

¶37 Relying on *Knippling*, the trial court concluded that Mr. Saenz's second degree assault conviction from Lewis County was not a most serious offense. In *Knippling*, Mr. Knippling, a juvenile, was originally charged with first degree robbery, for which the superior court had automatic jurisdiction. *Knippling*, 166 Wn.2d at 97. After plea negotiations, the first degree robbery charge was reduced to a second degree robbery charge. This meant that the juvenile court should have had jurisdiction over Mr. Knippling. However, the superior court did not remand the case to juvenile court. Mr. Knippling asserted that this conviction should not count as a strike because there was nothing in the court record showing that the juvenile court declined jurisdiction. Mr. Knippling's conviction was evidenced solely by a judgment and sentence that indicated he was a juvenile but did not explain why the superior court had jurisdiction such that the conviction should count as a strike under the POAA. *Id.* at 97-98.

¶38 The *Knippling* court concluded that in order to classify Mr. Knippling as an offender, the State was required to show that Mr. Knippling was convicted of an automatic decline charge or that the juvenile court declined jurisdiction. *Id.* at 101. There was no record of the declination hearing; therefore, the trial court concluded that Mr. Knippling's conviction was not a strike for purposes of the POAA. *Id.* at 102.

¶39 Here, in contrast to *Knippling*, there is documentation beyond merely the judgment and sentence. The record contains a stipulation and agreed order declining jurisdiction and remanding to superior court. After consultation with counsel, Mr. Saenz stipulated to a waiver of the

declination hearing required under RCW 13.40.110. Defense counsel stated, "Mr. Saenz and I had two conversations, one at length here, and two this afternoon. I believe that he understands what the implications are of having this moved to the adult court, but that is his desire at this time." Clerk's Papers at 116. Mr. Saenz also signed a guilty plea, which contained a paragraph stating that his offense was a most serious offense and if he committed two other most serious offenses, he would be sentenced to life in prison without the possibility of parole. Furthermore, in his guilty plea, Mr. Saenz checked the box that said his lawyer had read him the entire guilty plea and he understood it in full.

¶40 Here, the juvenile court did not err by failing to enter findings regarding the declination hearing because Mr. Saenz waived the hearing. The State has the burden to show that Mr. Saenz's waiver was express and intelligent after being fully informed of the right being waived. The record supports that the waiver was knowing and intelligent.

¶41 We reverse the trial court's conclusion that the POAA did not apply and remand for resentencing consistent with our opinion. We affirm the assault and firearm convictions.

SWEENEY and KORSMO, JJ., concur.

Review granted at 170 Wn.2d 1013 (2010).