# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE STATE OF WASHINGTON, | No. 86055-1-I |
| Respondent, | |
| v. | DIVISION ONE |
| JUAN JOSE MACIAS, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J.[1] — In 2020, Juan J. Macias was convicted of murder in the second degree with a firearm sentencing enhancement and unlawful possession of a firearm in the first degree, and sentenced to 300 months of total confinement. Macias appealed, and this court remanded the matter to the trial court for resentencing after the State agreed that errors had been made in calculating the offender scores. *State v. Macias*, No. 81677-2-I, slip op. at 1 (Wash. Ct. App. Dec. 27, 2021) (unpublished), *review denied*, 199 Wn.2d 1014 (2022).[2] On remand, the trial court resentenced Macias to 300 months.

Macias appeals, arguing the resentencing court abused its discretion when it denied his motion for an exceptional downward sentence and erroneously included his 2008 conviction in his offender score. Because Macias fails to show that the court abused its discretion when it denied his request for an exceptional

---

[1] Judge Lee is serving in Division One of this court pursuant to RCW 2.06.040.

[2] https://www.courts.wa.gov/opinions/pdf/816772.pdf.

sentence and his 2008 conviction was not constitutionally invalid on its face, we affirm Macias' sentence.

FACTS

The background facts of this case were summarized by our court in Macias' original appeal:

> On February 7, 2018, Macias gunned down D.E. as D.E. fled from a confrontation with Macias' friends. Macias fired four shots at D.E., killing the 16-year-old. The State charged Macias with first degree murder and first degree unlawful possession of a firearm. The court bifurcated the two counts for trial.
> Macias claimed self-defense. He argued he acted out of fear because D.E. was part of a group of men that robbed Macias at gunpoint five weeks earlier on New Year's Eve. According to Macias, on February 7, D.E. appeared to be holding a gun and made a threatening gesture as he ran away from Macias' friends. Macias said he "panicked," "thinking that [D.E.]'s gonna end up shooting me, too, again."

*Macias*, No. 81677-2-I, slip op. at 1-2 (footnote omitted).

A jury convicted Macias of the lesser included offense of murder in the second degree while armed with a firearm. The trial court also convicted Macias of unlawful possession of a firearm after a bench trial. Macias appealed the sentence imposed, arguing that the trial court should not have counted one of his prior felony convictions in his offender score because it had "washed out." *Id.* at 1. Macias also argued that the trial court erred by refusing to consider his youth at the time of the 2008 prior conviction as a mitigating factor warranting an exceptional downward sentence. *Id.*

This court agreed with Macias on the offender score issue, reversed Macias' sentence, and remanded for resentencing. *Id.* at 7. This court disagreed with

Macias on the youth as a mitigating factor issue and held that Macias' youth at the time of the 2008 conviction was not a mitigating factor as to the current convictions. *Id.* at 7-8.

At resentencing, Macias argued for an exceptional downward sentence of 102 months. In support, Macias offered expert testimony that he suffered from "an unspecified neurodevelopmental disorder" and "complex PTSD," which impacted his capacity to appreciate the wrongfulness of his conduct. Verbatim Rep. of Proc (VRP) at 19. He contended that D.E. was the primary aggressor of the incident and that Macias' youth at the time of his 2008 conviction was a mitigating circumstance for the current conviction.

Macias also challenged the inclusion of his 2008 robbery conviction in his offender score. Macias argued that in 2008, at the age of 17, he pleaded guilty to robbery in the second degree and assault in the third degree in adult court. With limited exceptions, juvenile courts have exclusive original jurisdiction over all proceedings relating to juveniles, RCW 13.04.030(1)(e), and may transfer its jurisdiction to the criminal division of the adult court "upon a finding that the declination would be in the best interest of the juvenile or the public," RCW 13.40.110(3). Macias argued that the juvenile court did not hold a requisite decline hearing and instead transferred the case to adult court pursuant to a stipulated order. Macias contended that without a decline hearing, the adult court lacked jurisdiction to accept Macias' guilty pleas, making the prior conviction invalid on its face. The resentencing court concluded the 2008 conviction was not

3

constitutionally invalid on its face, and it included the 2008 robbery conviction when calculating Macias' offender score.

The resentencing court calculated Macias' offender score as 3 for the second degree murder conviction[3] and sentenced Macias to 300 months.[4]  Macias appeals.

## ANALYSIS

A.    DENIAL OF EXCEPTIONAL DOWNWARD SENTENCE

Macias argues the resentencing court abused its discretion when the court denied his request for an exceptional downward sentence because the court failed to "properly consider all the mitigating factors proffered."  Br. of Appellant at 8.  We disagree.

### 1.    Legal Principles

Generally, a sentence within the standard sentencing range for an offense cannot be appealed.  RCW 9.94A.585(1).  However, an appellant is not barred from challenging the procedure by which a trial court imposed a sentence within the standard range.  *State v. Ammons*, 105 Wn.2d 175, 183, 713 P.2d 719, 718 P.2d 796, *review denied*, 479 U.S. 930 (1986).  "While no defendant is entitled to an exceptional sentence below the standard range, every defendant is entitled to ask the trial court to consider such a sentence and to have the alternative sentence

---

[3] An offender score of 3 made Macias' standard range sentence 154 to 254 months.

[4] This included the mandatory 60-month firearm enhancement.  The resentencing court also imposed a concurrent 34-month sentence for the unlawful possession of a firearm conviction.

actually considered." *State v. Grayson*, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005). "When a trial court is called on to make a discretionary sentencing decision, the court must meaningfully consider the request in accordance with the applicable law." *State v. McFarland*, 189 Wn.2d 47, 56, 399 P.3d 1106 (2017).

We review a trial court's denial of a defendant's request for an exceptional sentence for an abuse of discretion. *See Grayson*, 154 Wn.2d at 341-42. In this context, a court abuses its discretion if it "refuse[s] to exercise discretion at all or . . . relie[s] on an impermissible basis for refusing to impose an exceptional sentence below the standard range." *State v. Garcia-Martinez*, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997), *review denied*, 136 Wn.2d 1002 (1998). A court "refuses to exercise its discretion if it refuses categorically to impose an exceptional sentence below the standard range under any circumstances; i.e., it takes the position that it will never impose a sentence below the standard range." *Id.* A court relies on an impermissible basis if, for example, it decides "that no drug dealer should get an exceptional sentence" below the standard sentencing range or the court "refuses to consider the request because of the defendant's race, sex or religion." *Id.* However, "a trial court that has considered the facts and has concluded that there is no basis for an exceptional sentence has exercised its discretion, and the defendant may not appeal that ruling." *Id.*

2.    Mitigating Factors Considered

Macias argues he was entitled to an exceptional downward sentence based on statutory mitigating factors (RCW 9.94A.535(1)(a), (c), and (e)). The statutory mitigating factors allow a trial court to consider a mitigated sentence when the

5

victim was a primary aggressor (RCW 9.94A.535(1)(a)), the defendant committed the crime "under duress, coercion, threat, or compulsion insufficient to constitute a complete defense but which significantly affected his or her conduct" (RCW 9.94A.535(1)(c)), or "[t]he defendant's capacity to appreciate the wrongfulness of his or her conduct, or to conform his or her conduct to the requirements of the law, was significantly impaired" (RCW 9.94A.535(1)(e)).

Here, in announcing Macias' sentence, the resentencing court explained:

I did review the probable cause certification and prosecuting attorney's summary, the information. I reviewed the parties' briefing, memoranda, and all of the supporting materials for their briefing on the resentence.

As I said before, I reviewed the court of appeals' opinion. I reviewed [D.E.'s grandfather's] statement through the victim advocate—advocate office. I reviewed my earlier notes from the prior sentencing proceedings. The court has heard from [Macias' expert] today, I've heard from the attorneys.

. . . .

I'll cut to the chase, I think I got it right the first time. The state is here asking for a higher standard range sentence than I imposed. I imposed 240 months, which was within the standard range for an offender score of four. Now that the offender score is three, the standard range is 154 to 254 months. The state requests 254 months.

I am not sentencing Mr. Macias to the high end of the range, because while I disagree that his history of mental health diagnoses, traumas, PTSD, adverse childhood events and so forth did not meaningfully impact his decision making at the time that he shot and killed [D.E.], I think those things probably did impact his decision making leading up to those events and in deciding whether to go forward perhaps minutes before.

But when [D.E.] was flushed out from the taco truck and you see on the video him running away from the other participants, and I think I said this at the original sentencing hearing, Mr. Macias runs to him. He runs to intercept him. He is not running away from some kind of misperceived danger. He appears to be running to the person who's trying to run away from the other participants.

As the prosecution points out, Mr. Macias appears to be drawing a weapon from his own body, his own waist, before [D.E.] reaches for or pulls out or seems to point some object in Mr. Macias' direction.

Mr. Macias was part of a large group. He did not act alone. He did not, at least from the evidence the court heard during the trial, seem to be frightened of [D.E.] in the moment. He seemed to seek him out in order to kill him.

The opinions of the experts seem to suggest that or imply that Mr. Macias might have been acting in a kind of fight or flight situation where he recognized [D.E.] as someone who had hurt him before and had to make a quick decision about defending himself, so he pulled out a gun and shot him. Not only was that not persuasive to the jury, it's not persuasive to the court here for sentencing.

I think the video tells a much, much different story. Not solely the video, but the video is a significant component of the evidence here.

VRP at 111-13.

Macias does not argue that the resentencing court relied on an impermissible basis when it denied him an exceptional sentence. Rather, Macias argues the resentencing court failed to properly consider all the proffered mitigating evidence. The record, however, shows the resentencing court considered Macias' request for an exceptional sentence and declined to grant it based on its assessment of Macias' culpability.

At Macias' resentencing, the court explained that it was not sentencing Macias to the high end of the sentencing range because it believed his diagnoses impacted his decision making; however, the video evidence showed that Macias "seemed to seek [D.E.] out in order to kill him," and the court was not persuaded by expert opinion that Macias was in a "fight or flight situation." VRP at 113. This is an exercise of the resentencing court's discretion. *See Garcia-Martinez*, 88 Wn. App. at 330-31. It is clear the resentencing court properly exercised its discretion

7

by considering the evidence Macias presented and concluding that an exceptional sentence was not appropriate.

### 3. Juvenile when 2008 Offenses Committed

Macias also argues the resentencing court failed to consider the fact that he was a juvenile when he committed his 2008 offenses as a proper mitigating factor for an exceptional sentence below the standard range for his current offense.

This court previously held that Macias' youth in 2008 was not a mitigating factor as to the current convictions. *Macias*, No. 81677-2-I, slip op. at 7-8. The law of the case doctrine binds us to this ruling.

The law of the case doctrine provides an appellate holding enunciating a principle of law must be followed in subsequent stages of the same litigation. *Roberson v. Perez*, 156 Wn.2d 33, 41, 123 P.3d 844 (2005). Under the law of the case doctrine, an appellate court will generally refuse to consider issues that were decided in a prior appeal. *Folsom v. County of Spokane*, 111 Wn.2d 256, 263-64, 759 P.2d 1196 (1988). Thus, we do not consider this argument.[5]

We hold the resentencing court did not abuse its discretion when it denied Macias' request for an exceptional downward sentence and sentenced Macias within the standard sentencing range.

---

[5] We note that youth is a mitigating factor only if a defendant shows it "relates to the commission of the [current] crime." *In re Pers. Restraint of Light-Roth*, 191 Wn.2d 328, 336, 422 P.3d 444 (2018) (citing *State v. O'Dell*, 183 Wn.2d 680, 689, 358 P.3d 359 (2015)). Macias fails to explain how his youth when he committed his 2008 prior offense relates to the commission of the 2018 crime, committed when he was 27 years old.

B.     OFFENDER SCORE

Macias argues the resentencing court erred in considering his 2008 robbery conviction when calculating his offender score because the conviction had been entered by the adult court instead of a juvenile court.   Because Macias has not shown that the prior conviction was constitutionally invalid on its face, we disagree.

We review a sentencing court's calculation of an offender score de novo. *State v. Tili*, 148 Wn.2d 350, 358, 60 P.3d 1192 (2003).   Prior convictions are used to determine the offender score, which in turn is used to determine the applicable presumptive standard sentencing range.   RCW 9.94A.525, .530.   Generally, the State does not need to prove the constitutional validity of a defendant's prior conviction for use in a sentencing proceeding.   *Ammons*, 105 Wn.2d at 187. However, if a prior conviction was unconstitutionally obtained or constitutionally invalid on its face, it may not be considered.   *Id.* at 187-88.   A conviction is constitutionally invalid on its face if, "without further elaboration," the conviction "evidences infirmities of a constitutional magnitude."   *Id.* at 188.

Courts should not "go behind the verdict and sentence and judgment" to determine whether a conviction should be considered.   *Id.* at 189.   Rather than merely showing the possibility of a violation, the face of the conviction must affirmatively show that a constitutional violation occurred.   *Id.*

In *Ammons*, the court rejected the argument that a prior conviction was facially invalid because the guilty plea form did not show that the appellant was advised of his right to remain silent, did not list the elements of his crime, and did not contain the consequences of pleading guilty.   *Id.*   The court reasoned that

although the appellant raised valid concerns, no infirmities were evident on the face of his guilty plea. *Id.*

In *State v. Inocencio*, 187 Wn. App. 765, 351 P.3d 183 (2015), the defendant argued that two of his prior convictions committed while he was a minor should not be counted in his offender score because they had been entered by the adult court instead of a juvenile court. *Id.* at 767. The court, distinguishing *State v. Saenz*, 175 Wn.2d 167, 283 P.3d 1094 (2012), and *State v. Knippling*, 166 Wn.2d 93, 206 P.3d 332 (2009), stated that where only an offender score is at issue, the State can meet its burden of proving a defendant's criminal history without proving a prior sentencing court's jurisdiction. *Id.*

In *Saenz* and *Knippling*, both of which involved sentences imposed under the Persistent Offender Accountability Act (POAA) of the Sentencing Reform Act of 1981, chapter 9.94A RCW, our Supreme Court held that the State failed to meet its burden of proving that a defendant had been convicted as an "offender" of a "strike" offense when it offered evidence of a conviction at a time when the defendant was less than 18 years old without demonstrating that they were properly before the adult criminal court. 175 Wn.2d at 181; 166 Wn.2d at 100-01. Notably, "offender" is defined to include both adult felons and

> [a] person who has committed a felony established by state law . . . and is less than 18 years of age but whose case is under superior court jurisdiction under RCW 13.04.030 or has been transferred by the appropriate juvenile court to a criminal court pursuant to RCW 13.40.110.

RCW 9.94A.030(34). However, unlike the defendants in *Saenz* and *Knippling*, Inocencio was not sentenced under the POAA; rather, Inocencio was sentenced

under the Sentencing Reform Act, which requires the State to prove "only a defendant's 'criminal history.'" *Inocencio*, 187 Wn. App. at 775. "'Criminal history' means the list of a defendant's prior convictions and juvenile adjudications, whether in this state, in federal court, or elsewhere." RCW 9.94A.030(11). Citing *Ammons*, the court concluded that Inocencio did not demonstrate that his prior convictions were unconstitutionally obtained or constitutionally invalid on their face. *Inocencio*, 187 Wn. App. at 777-78. Thus, the prior convictions were properly included in his offender score. *Id.* at 778.

Here, like *Inocencio*, Macias was not sentenced under the POAA; thus, Macias has the burden of demonstrating the invalidity of the prior conviction, by showing either that the prior conviction was unconstitutionally obtained or constitutionally invalid on its face. *Ammons*, 105 Wn.2d at 188. He has not done so. Therefore, the resentencing court correctly determined that the 2008 robbery conviction counted in the offender score calculation of Macias' current sentence.

CONCLUSION

We affirm Macias' sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

WE CONCUR: