[No. 84949-8.   En Banc.]
Argued October 27, 2011.    Decided August 23, 2012.

THE STATE OF WASHINGTON, *Respondent*, v. JORGE ARIEL SAENZ,
*Petitioner*.

168

*Tanesha La Trelle Canzater*, for petitioner.

*James P. Hagarty, Prosecuting Attorney*, and *Kevin G. Eilmes, Deputy*, for respondent.

¶1 WIGGINS, J. — This case requires us to examine how our juvenile justice laws interact with the Persistent Offender Accountability Act (POAA) of the Sentencing Reform Act of 1981, chapter 9.94A RCW, also known as the "three strikes law." When Jorge Saenz was 15 years old, he agreed to waive juvenile court jurisdiction and transfer his case to adult court, where he pleaded guilty to two counts of felony assault in exchange for a moderately lower sentencing recommendation. As a result, seven years later he faces life in prison without the possibility of parole under the POAA. We now examine whether his waiver of juvenile court jurisdiction was valid and whether his case was properly transferred to adult court. We conclude first that Saenz's waiver was invalid because there is virtually nothing in the record demonstrating that it was intelligently made or that Saenz was fully informed when he made it. Next, we hold that Saenz's case was not properly transferred to adult court because the commissioner transferring the case failed to enter findings that transfer was in the best interest of the juvenile or the public as required by statute. On these facts, we hold that Saenz's conviction cannot be used as a "strike" to sentence him to spend the rest of his life in prison with no possibility of release, the second harshest sanction in our criminal justice system. Instead, we affirm the 561-month sentence imposed by the trial court.

## FACTS

¶2 In 2008, Saenz was convicted by a jury of two counts of first degree assault and one count of unlawful possession of a firearm. He was accused of shooting two members of a rival gang in Sunnyside, Washington, in January 2008. After the jury reached its verdict, the State sought to sentence Saenz under the POAA. *See* RCW 9.94A.570.

Saenz had two prior convictions that were potentially strikes, both gang-related assault convictions. One of them was the 2001 guilty plea to assault when Saenz was only 15 years old.

¶3 At his "three strikes" hearing, Saenz argued that his 2001 conviction could not be used as a strike. He argued that there were two defects in the transfer of his case from juvenile to adult court precluding the conviction from being used against him under the POAA: (1) there was no decline hearing and he did not knowingly and intelligently waive his decline hearing *or* juvenile court jurisdiction and (2) the juvenile court did not enter findings that declining juvenile jurisdiction was in the best interest of Saenz or the public as required by former RCW 13.40.110(2) and (3) (1997).

¶4 For Saenz's 2001 conviction, the juvenile court did not hold a decline hearing before transferring the case to adult court. Saenz stipulated to a waiver of his hearing and to transfer to adult court as part of a plea bargain that dropped multiple charges and reduced the length of his sentence. However, the record for the 2001 conviction contained very little evidence that the waiver was made knowingly and intelligently, only a statement by Saenz's attorney that "Mr. Saenz and I had two conversations, one at length here, and two this afternoon. I believe that he understands what the implications are of having this moved to adult court, but that is his desire at this time." Clerk's Papers at 116.

¶5 Nevertheless, a juvenile court commissioner accepted the stipulation and transferred the case to adult court where Saenz pleaded guilty to second degree assault and custodial assault 10 days later. His guilty plea contained an acknowledgement that Saenz's offense was a potential strike offense, and Saenz checked a box on the guilty plea that said he had read the plea and understood it.

¶6 The trial court ruled that in these circumstances the 2001 conviction could not be used as a strike, sentencing Saenz to 561 months in prison instead of the State's

requested sentence of life without possibility of parole. The Court of Appeals reversed and remanded for resentencing as a persistent offender. *State v. Saenz*, 156 Wn. App. 866, 878-79, 234 P.3d 336 (2010). We granted review. 170 Wn.2d 1013, 245 P.3d 775 (2010).

## ANALYSIS

### I. Standard of Review

■■ ¶7 The prosecution bears the burden of proving by a preponderance of the evidence that a conviction can be used as a strike under the POAA, and we review a trial court's determination de novo. *State v. Knippling*, 166 Wn.2d 93, 98, 100-01, 206 P.3d 332 (2009).

### II. Overview of the Juvenile Justice System

¶8 The magnitude of Saenz's decision to be tried as an adult is best understood by examining the history of and policy behind the juvenile justice system. In 1905, Washington enacted legislation establishing juvenile courts in response to a wider reform movement focused on treating and rehabilitating juveniles instead of subjecting them to the harsh procedures, penalties, and jail conditions of adult courts. *State v. Rice*, 98 Wn.2d 384, 389, 655 P.2d 1145 (1982). In Washington's new juvenile courts, " '[t]he idea of crime and punishment was to be abandoned. The child was to be "treated" and "rehabilitated" and the procedures, from apprehension through institutionalization, were to be "clinical" rather than punitive.' " *Id.* (quoting *In re Gault*, 387 U.S. 1, 15-16, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967)).

■ ¶9 Despite these early goals, as juvenile crime rates rose the failings of a wholly rehabilitative system became apparent, leading to Washington's adoption of the Juvenile Justice Act of 1977, chapter 13.40 RCW. The act departed from the old view of the juvenile courts as rehabilitators and service providers in favor of a new view that saw them, at least in part, as instruments for administering justice in

light of the realities of juvenile criminality. Despite the act's shift, the legislature still intended to foster "a system capable of having primary responsibility for, being accountable for, and *responding to the needs of youthful offenders . . . .*" RCW 13.40.010(2) (emphasis added). Thus, although the act made juvenile courts more punitive, it preserved the fundamental difference between juvenile courts and adult courts—unlike wholly punitive adult courts, juvenile courts remained rehabilitative.

¶10 This fundamental difference is manifest in the additional protections juveniles receive in juvenile court but not in adult court. Most pertinent here, juvenile offenses do not count as strikes under the POAA. RCW 9.94A.030(37), (34). There are numerous other protections as well. For example, juvenile courts have far more discretion to order alternative sentences, such as diversion agreements in lieu of prosecution, community supervision, and individualized programs involving employment, education, or treatment. *See, e.g.,* RCW 13.40.080, .0357 ("Option B, Suspended Disposition Alternative"), .020(4). In juvenile court, convicted offenders cannot be confined past the age of 21. RCW 13.40.300. Juvenile offenses are not generally considered crimes, so a juvenile cannot be convicted of a felony. RCW 13.04.240; *In re Pers. Restraint of Frederick*, 93 Wn.2d 28, 30, 604 P.2d 953 (1980). A juvenile cannot be sent to adult prison, or to any adult jail or holding facility. RCW 13.04.116. There are limitations on the use of juvenile records and the length of time they will be made public. *See* RCW 13.50.050. Juvenile courts can consider mitigating factors at disposition hearings, RCW 13.40.150(3)(h), and can impose sentences outside standard sentencing ranges to prevent "manifest injustice." RCW 13.40.160(2).

¶11 Ordinarily, juvenile offenders are guaranteed these increased protections because juvenile courts have automatic, statutorily granted jurisdiction over any person

under 18 who is charged with a crime.[1] RCW 13.04.030. However, the defendant, the State, or the juvenile court can request that the case be transferred to adult court after a decline hearing. RCW 13.04.030(1)(e)(i). At the decline hearing, the court must consider eight factors set forth in *Kent v. United States* to decide whether to decline jurisdiction. 383 U.S. 541, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966);[2] *State v. Holland*, 98 Wn.2d 507, 515, 656 P.2d 1056 (1983).

¶12 When a juvenile waives juvenile court jurisdiction he or she also waives the increased protections of the juvenile justice system, exiting a system designed to rehabilitate and entering a system designed to punish. This exit is a one-way street with no return: by waiving juvenile jurisdiction once, the juvenile enters the adult system permanently, forfeiting the right to be tried in juvenile court for all future offenses. RCW 13.40.020(14); *State v. Sharon*, 100 Wn.2d 230, 231, 668 P.2d 584 (1983). Thus, moving a case from juvenile court to adult court is "a 'critically important' action determining vitally important statutory rights of the juvenile." *Kent*, 383 U.S. at 556 (citing *Black v. United States*, 122 U.S. App. D.C. 393, 355 F.2d 104, 105 (1965)).

¶13 The critical importance of transferring a juvenile to adult court prompted our legislature to include statutory protections before the transfer can be made. First,

---

[1] Some exceptions provide for juvenile prosecution in adult courts. For example, juveniles aged 16 or 17 charged with a serious violent offense will automatically be transferred to adult court. RCW 13.04.030(1)(e)(v)(A). Because Saenz was only 15 years old when he was charged in 2001, he was not automatically transferred to adult court.

[2] The eight factors are (1) seriousness of the alleged offense to the community and whether protection of the community requires declination; (2) whether the alleged offense was committed in an aggressive, violent, premeditated, or willful manner; (3) whether the alleged offense was against persons or property; (4) the prosecutive merit of the complaint; (5) desirability of trial and of disposition of the entire offense in a single proceeding (if defendant's associates are adults); (6) the sophistication and maturity of the juvenile as determined by consideration of the juvenile's home, environment, situation, emotional attitude, and pattern of living; (7) the record and previous history of the juvenile; (8) prospects for adequate protection of the public and likelihood of reasonable rehabilitation of the juvenile. *Kent*, 383 U.S. at 566-67.

like the waiver of any right in juvenile court, a juvenile's waiver of juvenile court jurisdiction and a decline hearing must be an "express waiver intelligently made by the juvenile after the juvenile has been fully informed of the right being waived." RCW 13.40.140(9). Second, after a decline hearing but before transferring a case to adult court, juvenile courts must enter findings in the record, including a finding that transfer to adult court is in the best interest of the juvenile or the public. Former RCW 13.40-.110(2), (3).[3] Only then can the juvenile court properly transfer the case to adult court. *Id.*

## III. Juveniles' Adult Court Convictions under the POAA

¶14 Compliance with the requirements for declining juvenile jurisdiction becomes important here because a juvenile's conviction in adult court can be used as a strike under the POAA only if the State shows that transfer to adult court was proper. *Knippling*, 166 Wn.2d at 101-02. This showing is required because an offense counts as a strike under the POAA only if it was committed by an "offender." A juvenile can be an offender only if he or she "committed a felony" and the "case is under [adult] jurisdiction under RCW 13.04.030 or has been transferred by the appropriate juvenile court to a criminal court pursuant to RCW 13.40-.110." Former RCW 9.94A.030(31) (2006).[4] Thus, the State must show that the statutory prerequisites to transfer were met before the conviction can be used as a strike. Here, that means showing that either there was a decline hearing or the hearing was properly waived[5] *and* the juvenile court

---

[3] These requirements are now codified under RCW 13.40.110(3) and (4).

[4] "Offender" is currently defined in RCW 9.94A.030(34).

[5] It could be argued under the current version of RCW 13.40.110 that neither the prosecution nor the juvenile nor the juvenile court can "waive" a decline hearing. RCW 13.40.110(1) permits a "[d]iscretionary decline hearing" if requested by "prosecutor, respondent, or the court . . . ." Subsection (2) requires a mandatory

entered written findings that transfer of the case was in either Saenz's or the public's best interest. Former RCW 13.40.110(2), (3).

¶15 *Knippling* controls our analysis. In *Knippling*, the State relied on the defendant's prior conviction as a juvenile in adult court in seeking a persistent offender sentence. 166 Wn.2d at 97. The defendant had been charged with first degree robbery when he was a juvenile, a charge automatically filed in adult court. *Id.*; former RCW 13.04-.030(1)(e)(v)(C) (1997). The defendant pleaded down to second degree robbery, a charge over which the juvenile court had jurisdiction and for which a decline hearing is required before transfer to adult court. *Knippling*, 166 Wn.2d at 97; former RCW 13.40.110(1)(a). There was no decline hearing, but the defendant was nevertheless convicted in adult court. *Knippling*, 166 Wn.2d at 96, 102. We held that the defendant's conviction could not be a strike under the POAA because, where the juvenile court failed to follow the statutory transfer procedures, the State could not show the defendant was convicted as an "offender" in adult court as required by former RCW 9.94A.030(31). *Id.* at 101-02.

¶16 Just as in *Knippling*, here the juvenile court failed to hold the mandatory decline hearing, nor was the hearing validly waived. Equally problematic, the juvenile court commissioner in Saenz's case did not enter written findings that decline was in the best interest of either Saenz or the public. These statutory defects are just as fatal as the defect in *Knippling*.

## IV. Inadequate Record of Saenz's Waiver

¶17 A waiver of any right in juvenile court must be an "express waiver intelligently made by the juvenile after the

decline hearing "[u]nless waived by the court, the parties, and their counsel . . . ." Subsection (3) provides, "The court after a decline hearing may order the case transferred for adult criminal prosecution upon a finding that the declination would be in the best interest of the juvenile or the public." This language suggests that a decline hearing is required in order to decline juvenile court jurisdiction, but neither party has made that argument, and we express no opinion on the point.

juvenile has been fully informed of the right being waived." RCW 13.40.140(9).

¶18 Here, we have no way of knowing whether Saenz's waiver of juvenile court jurisdiction and his decline hearing was knowingly and intelligently made. There is simply nothing in the record that shows Saenz understood the serious implications of having his case transferred to adult court. Although Saenz's attorney stated that she had at least "two conversations" with Saenz about the waiver, the record does not indicate what was discussed in those extrajudicial conversations, whether Saenz was "intelligently" waiving his rights, or whether he had been "fully informed of the right being waived" as required by RCW 13.40.140(9). Saenz had never been in adult court, and nothing in the record shows he understood the important protections he was waiving or that his adult conviction could be used as a strike to sentence him to life imprisonment without possibility of parole. The record does not suggest that Saenz realized he was departing the rehabilitative juvenile justice system forever in favor of the more punitive adult system.

¶19 We also reject the State's argument that we can be sure Saenz understood his rights because he checked a box on a guilty plea. The State's argument is based on the fact that 10 days after his juvenile court hearing, in adult court, Saenz checked a box on his guilty plea indicating that he understood the rights he was waiving by taking the plea. By checking this box, Saenz possibly indicated that he had read his plea and understood it *when he signed the guilty plea*. And he possibly indicated that he understood the rights he was giving up *in adult court*. But Saenz's acknowledgement that he read his guilty plea has no bearing on whether he understood his entirely separate waiver of rights in juvenile court. The guilty plea simply does not detail all the rights Saenz gave up by exiting the juvenile system, and the record contains no evidence that Saenz was ever informed of those rights.

¶20 Without proof that Saenz had some inkling of the numerous protections he was surrendering by waiving juvenile jurisdiction and a decline hearing, his waiver cannot be considered to have been made intelligently. This holding is consistent with our previous juvenile waiver cases, including *Dutil v. State*, where we said that a juvenile does not need to understand the "precise legal effect" of a waiver. 93 Wn.2d 84, 90, 606 P.2d 269 (1980). We should not take this language out of context. *Dutil* involved juveniles waiving their right to remain silent and right to counsel; both of these rights are clearly explained through *Miranda*[6] warnings along with the warning that anything the defendant says can be used against him or her in a court of law. Thus, in *Dutil*, the juveniles had already been informed not only of their rights but of the effect of waiving those rights: It is explicit in the warnings that the defendant's statements may be used in court if the defendant chooses not to exercise the right to remain silent. Saenz's case stands in stark contrast. Here, there is no evidence in the record that Saenz received *any* information about the rights he was waiving, let alone the potentially critical legal effect of the waiver. We have no way of knowing what Saenz understood about his rights. As a result, we cannot say that Saenz was "fully informed" or that his waiver was "intelligently made."

¶21 Like the court in *Knippling*, the adult court here convicted Saenz in spite of the fact that juvenile court jurisdiction had not been effectively waived or declined. Under these circumstances, just like in *Knippling*, we cannot consider the juvenile conviction a strike under the POAA. Instead, Saenz must serve the 561-month sentence imposed by the trial court.

*V. No Written Findings of the Best Interest of the Juvenile or the Public*

¶22 Our juvenile justice code explicitly requires juvenile courts to enter written findings before declining juvenile

---

[6] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

jurisdiction; these requirements are codified in former RCW 13.40.110(2) and (3):

(2) The court after a decline hearing may order the case transferred for adult criminal prosecution upon a finding that the declination would be in the best interest of the juvenile or the public. The court shall consider the relevant reports, facts, opinions, and arguments presented by the parties and their counsel.

(3) When the respondent is transferred for criminal prosecution or retained for prosecution in juvenile court, the court shall set forth in writing its finding which shall be supported by relevant facts and opinions produced at the hearing.

These requirements are mandatory. A transfer of juvenile jurisdiction to adult court is not valid until the juvenile court has fulfilled its solemn responsibility to independently determine that a decline of jurisdiction is in the best interest of the juvenile or the public and entered written findings to that effect before transferring the case. Former RCW 13.40.110(2), (3).

¶23 Even where the parties stipulate to decline juvenile jurisdiction, the statute still requires the court to enter findings, and the court cannot transfer a case to adult court until it has done so. If transfer is not in the best interest of the juvenile or the public, the juvenile cannot be transferred, despite any agreement among the parties. The State argues that there was no need for written findings since there was no hearing. We reject this argument because it ignores our juvenile justice system's paternalistic and protective foundations. Juvenile court judges are not simply potted palms adorning the courtroom and sitting idly by while parties stipulate to critically important facts. Instead, these judges enforce a juvenile code "designed with [juveniles'] special needs and limitations in mind." *Dutil*, 93 Wn.2d at 94.

¶24 It is these special needs and limitations that prompted our legislature to require juvenile court judges to independently decide whether declining juvenile court ju-

risdiction is in the best interest of either the juvenile or the public and to set forth written findings supporting their decisions. These legislatively mandated requirements are not erased the moment the parties stipulate to a waiver.

¶25 This holding is consistent with other jurisdictions that have recognized the special needs of juveniles and held that juvenile courts have an independent responsibility to decide whether to decline jurisdiction regardless of any stipulation by the parties. In *State ex rel. Romley v. Superior Court*, the Arizona appeals court held that a juvenile court was not bound to accept the parties' stipulation to adult court jurisdiction but that the court had a responsibility to independently determine that waiving its jurisdiction was in the best interest of the juvenile or the public. 170 Ariz. 339, 341-42, 823 P.2d 1347 (Ct. App. 1991). Similarly, in *Duvall v. State*, the Indiana appeals court held that the court cannot simply accept the parties' stipulation to waiver of juvenile jurisdiction: "[a]lthough the exclusive jurisdiction of the Juvenile Court inures to the benefit of the juvenile, it is nevertheless the court's jurisdiction. Thus, a 'stipulation' or consent to waiver of juvenile jurisdiction does not relieve the Juvenile Court from its duty to independently and conscientiously determine the appropriateness of waiver." 170 Ind. App. 473, 477, 353 N.E.2d 478 (1976). In *State v. Smith*, the Supreme Court of Kansas held that it was an abdication of the court's responsibility to waive jurisdiction based only on a stipulation. 268 Kan. 222, 244-45, 993 P.2d 1213 (1999).

¶26 Similarly, we hold that under RCW 13.40.110, a judge must carefully weigh whether declining jurisdiction is in the best interest of the juvenile or the public and enter findings to that effect, even where the parties waive the decline hearing and stipulate to transfer to adult court. If the judge is unable to enter findings without a hearing, the judge should order a hearing. These are important decisions. The ramifications of waiving juvenile court jurisdiction are as numerous as they are drastic. In order to

maintain "a system capable of . . . responding to the needs of youthful offenders," RCW 13.40.010(2), our courts must independently weigh a minor's critical decision to waive juvenile jurisdiction.

¶27 Here, the juvenile court failed to enter findings before transferring Saenz's case to adult court. The agreed order declining jurisdiction included only the stipulation itself and a brief statement by the court ordering the transfer from juvenile court to superior court. Because this did not meet the statutory requirement of former RCW 13.40.110(2) and (3), Saenz's transfer to adult court was defective and his 2001 conviction in adult court cannot be used as a strike under the POAA.

## CONCLUSION

¶28 We reverse the Court of Appeals and affirm the sentence imposed by the trial court. Although a life sentence is improper given the inadequacies in Saenz's 2001 conviction, Saenz still must serve over 46 years in prison (561 months) including 10 years (120 months) of "hard time" for firearm enhancements for which he cannot earn good behavior credit. This is a serious punishment, as befits Saenz's crime.

MADSEN, C.J.; C. JOHNSON, CHAMBERS, OWENS, and FAIRHURST, JJ.; and ALEXANDER, J. PRO TEM., concur.

¶29 J.M. JOHNSON, J. (dissenting) — Jorge Ariel Saenz has been convicted of second degree assault on two separate occasions and of attempted murder on the present occasion. These convictions are "most serious offense[s]" and justify the imposition of a sentence of life without the possibility of parole. Former RCW 9.94A.030(28) (LAWS OF 2006, ch. 139, § 5). The majority erroneously subjects Saenz's waiver of his statutory rights to the most exacting of scrutiny and in a manner that equates a statutory right with one of consti-

tutional import. Against reasonable inferences from the common and ordinary meaning of former RCW 13.40.110 (1997), the majority also requires that the juvenile court provide written findings that a juvenile's waiver of jurisdiction and a declination hearing is in the best interest of the juvenile or the public. The record indicates that it was Saenz's expressed desire to proceed with the transfer after coming to a full understanding of the effect of the waiver. Thus, I would affirm the Court of Appeals in ruling that Saenz's 2001 conviction can be used as a strike and respectfully dissent.

## A. Waiver

¶30 The majority relies heavily on *State v. Knippling*, 166 Wn.2d 93, 206 P.3d 332 (2009) in arguing that the juvenile court did not properly decline jurisdiction. In *Knippling*, a juvenile had originally been charged with first degree robbery, which was an offense for which the adult court had automatic jurisdiction. *Id.* at 97. After plea negotiations, the charge was reduced to second degree robbery, thereby giving the juvenile court exclusive jurisdiction. *Id.* The adult court, however, never remanded the case to juvenile court. *Id.* This court decided in *Knippling* that the second degree robbery conviction did not count as a strike under the Persistent Offender Accountability Act (POAA) of the Sentencing Reform Act of 1981, chapter 9.94A RCW, because there was no evidence other than a judgment and sentence to explain why the adult court had jurisdiction. 166 Wn.2d at 97-98.

¶31 In Saenz's case, however, there is no issue of automatic jurisdiction with subsequent failure to remand once the juvenile court gained exclusive jurisdiction. Additionally, there is specific documentation regarding Saenz's waiver of juvenile court jurisdiction. The record contains a written stipulation and agreed order declining jurisdiction and a specific statement from counsel indicating Saenz's expressed desire to proceed with the transfer after coming

to a full understanding of the effect of the waiver. All of these facts distinguish Saenz's case from *Knippling* and demonstrate that *Knippling*'s holding should not control in the current case.

¶32 By statute, Washington state law provides that "[w]aiver of any right which a juvenile has under [RCW 13.40.110] must be an express waiver intelligently made by the juvenile after the juvenile has been fully informed of the right being waived." RCW 13.40.140(9). The majority chooses to disregard evidence on the record from counsel indicating that it was Saenz's expressed desire to proceed with the transfer after coming to a full understanding of the effect of the waiver. Majority at 177. The majority's reasoning in this regard is that there were no extrajudicial conversations in the record as to what was actually discussed between counsel and defendant. *Id.* First, this reasoning ignores the protections of attorney-client privilege that preclude counsel from providing extrajudicial statements between counsel and defendant without the consent of his or her client.

¶33 Second, the majority elevates a statutory right to juvenile court jurisdiction and a declination hearing to that of a right deserving constitutional protection. Defense counsel is considered an officer of the court and charged with representing the interests of each defendant. The indication of defense counsel in this case that Saenz had come to a full understanding of the effect of the waiver should be sufficient under the circumstances. By explaining that the outcome of this case is consistent with our precedent in *Dutil v. State*, 93 Wn.2d 84, 90, 606 P.2d 269 (1980), the majority demonstrates its concern for protecting the statutory right of juvenile jurisdiction in a manner reserved only for rights of constitutional import because the waiver at issue in *Dutil* was for the juveniles' *Miranda*[7] rights under the United States Constitution. Our juvenile system's pa-

---

[7] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

ternalistic and protective foundations do not justify a level of scrutiny for a waiver of a statutory right that is commensurate with constitutional protections. The legislature is also free to clarify the intended requirements for waiver of any right that a juvenile has under RCW 13.40.110.

¶34 Here, Saenz declined juvenile court jurisdiction and personally signed an agreed stipulation specifically waiving the requirement of a declination hearing. He sought the advice of counsel multiple times in making this decision. His counsel also confirmed on the record that it was Saenz's expressed desire to proceed with the transfer after coming to a full understanding of the effect of the waiver. Furthermore, Saenz checked a box in his guilty plea and signed it, which further indicates that he understood that he would be sentenced to life without the possibility of parole if convicted of two other most serious offenses. Thus, I would hold that the record demonstrates that Saenz's waiver of juvenile court jurisdiction was "an express waiver intelligently made by the juvenile after the juvenile has been fully informed of the right being waived." RCW 13.40.140(9).

## B. Written Findings

¶35 In declining jurisdiction, former RCW 13.40.110(2) requires the juvenile court to make a finding that transfer to adult court "would be in the best interest of the juvenile or the public." This finding must be in writing and "supported by relevant facts and opinions produced at the hearing." Former RCW 13.40.110(3). Once the juvenile waives both jurisdiction and a declination hearing, however, there are no facts and opinions produced at the hearing to support a finding because there was no hearing in the first place. Without a hearing, the juvenile court cannot be expected to provide a written finding that transfer to adult court "would be in the best interest of the juvenile or the public." Former RCW 13.40.110(2). Thus, I would hold that the juvenile court's failure to make a finding where there was no hearing—by agreement—does not prevent Saenz's 2001 conviction from counting as a strike under the POAA.

CONCLUSION

¶36 I would affirm the Court of Appeals and remand Saenz's case to the Yakima County Superior Court for resentencing. Evidence in the record demonstrates that Saenz understood the implications of transfer to adult court after consultation with counsel, and Saenz executed an express waiver of juvenile court jurisdiction. After execution of the waiver, which also waived the hearing, the juvenile court was not required to make a finding regarding the best interest of the juvenile or the public. Thus, I would hold that Saenz's 2001 second degree assault conviction counts as a strike under the POAA.

STEPHENS, J., concurs with J.M. JOHNSON, J.