IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 27489-6-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| STEPHEN ANTHONY BAILEY, | ) | |
| | ) | |
| Appellant. | ) | |

KULIK, J. — At 16 years of age, Stephen Bailey stipulated to a waiver of juvenile court jurisdiction and pleaded guilty to second degree robbery in adult court. The State later used this conviction as a "strike" under the Persistent Offender Accountability Act (POAA) of the Sentencing Reform Act of 1981, chapter 9.94A RCW. In an unpublished decision, this court concluded that the transfer of Mr. Bailey's case to adult court was proper and, therefore, the robbery conviction could be used as a strike under the POAA. *State v. Bailey*, noted at 157 Wn. App. 1026, 2010 WL 3034924, *review granted*, 176 Wn.2d 1001, 291 P.3d 886 (2013). We are now asked to reconsider our decision in light of *State v. Saenz*, 175 Wn.2d 167, 283 P.3d 1094 (2012), which identified two specific

prerequisites for a valid transfer of juvenile court jurisdiction: (1) the juvenile must be fully informed of the rights and protections being waived, and (2) the juvenile court must enter written findings in the record, including a finding that transfer is in the best interest of the juvenile or public.

Adhering to the analysis and holding in *Saenz*, we conclude that Mr. Bailey was not fully informed of the rights he waived and no written finding was entered that transfer was in the best interest of the juvenile or public. Accordingly, we reverse the robbery sentence.

## FACTS

In 1997, Stephen Bailey, who was 16, was charged by information with first degree robbery. In February 1998, Mr. Bailey entered an *Alford*[1] plea in adult court and waived a declination hearing in exchange for the State's promise to reduce the charge to second degree robbery. The stipulation regarding transfer to adult court provided:

> The defendant and his attorney herein indicate agreement that the prosecution of the Amended Information accusing the defendant of the crime of Second Degree Robbery with a deadly weapon shall be manifested in the adult division of the Yakima County Superior Court. The defendant and his attorney specifically consent to the waiver of any and all rights under RCW 13.40.110 (or any other applicable statute) to a declination hearing.

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

2

No. 27489-6-III
*State v. Bailey*

The court finds that the agreement of the parties is consistent with the interest of justice.

Ex. B.

During the guilty plea hearing, the court explained the declination process as follows:

> THE COURT: All right. Do you know what declination is?
> THE DEFENDANT: Going to prison.
> THE COURT: I'm sorry?
> THE DEFENDANT: Getting sent to prison.
> THE COURT: Well, it means—you're 16 now, is that right?
> THE DEFENDANT: Yeah.
> THE COURT: Juvenile court has jurisdiction over you. You are in adult court right now because you were originally charged with a Class A felony, first-degree robbery. The [S]tate is reducing the charge to second-degree robbery.
> So, technically, you could go back to juvenile court. But part of the agreement is that you won't go back, and you are going to be treated as an adult here. And you are giving up the right to have a hearing to determine whether you should remain in juvenile court. Do you understand that?
> THE DEFENDANT: Yeah.
> THE COURT: Are you sure?
> THE DEFENDANT: Yes.

Ex. E at 1-2.

The court further explained to Mr. Bailey that the second degree robbery was "a very serious offense," which meant that he would "have a strike on [his] record already." Ex. E at 6. Mr. Bailey responded, "[t]hat means I'll have a felony, one strike." Ex. E at 6.

3

Ten years later, Mr. Bailey was convicted of first degree assault and intimidating a witness. The State sought a sentence under the POAA. At sentencing, Mr. Bailey challenged the use of the 1998 second degree robbery conviction as a strike under the POAA, arguing that he did not knowingly and intelligently waive his right to be tried in juvenile court. He testified that no one had explained that pleading guilty to a strike crime could potentially result in a life sentence and claimed that when he agreed to give up juvenile court jurisdiction, he believed a strike offense was the same as a felony offense. Defense counsel argued:

> [W]hen a person has just turned 16 and is facing an extremely large amount of time in prison based on a very serious charge that person will sign anything and say anything. . . . At an age when a person is not old enough to sign a contract or buy a car or rent a house the Court expects that person to somehow be savvy enough to waive extraordinarily critical rights. . . . The testimony from Mr. Bailey is he thought all felonies were strikes.

Report of Proceedings (RP) at 1526-27.

The sentencing court reviewed the transcript of the 1998 guilty plea hearing and concluded that Mr. Bailey's waiver was voluntary and intelligent, stating, "The fact that he went through that process with a lawyer satisfies me that the process was thorough and complete and [the trial judge] made appropriate findings and . . . an appropriate colloquy." RP at 1552.

4

Mr. Bailey appealed. This court concluded that Mr. Bailey intelligently waived his right to a declination hearing because he had been fully informed of the rights he was waiving and, therefore, the second degree robbery was properly counted as a strike under the POAA. We specifically noted that the trial court had informed Mr. Bailey that he was entering a plea to a strike crime, that he would be confined in adult prison, and that he had acknowledged in his written guilty plea statement that second degree robbery was a "most serious offense" that could count toward a mandatory life sentence. *Bailey*, 157 Wn. App. 1026. Mr. Bailey filed a petition for review in the Supreme Court.

After Mr. Bailey filed his petition for review, the Washington Supreme Court reviewed the intersection of the Juvenile Justice Act of 1977, chapter 13.40 RCW, with the POAA in *Saenz*. The court held that even when parties stipulate to a waiver of juvenile court jurisdiction, the juvenile court is statutorily required to enter findings that transfer is in the best interest of the juvenile or the public before transferring the case to adult court. *Saenz*, 175 Wn.2d at 180. The court also held that before a waiver of juvenile court jurisdiction can be deemed knowing and intelligent, the juvenile must be informed of the significant protections and rights he forever surrenders by waiving juvenile court jurisdiction. *Id.* at 178.

The court granted Mr. Bailey's petition for review and remanded the case for reconsideration in light of *Saenz*.

## ANALYSIS

This court reviews de novo a sentencing court's decision to consider a prior conviction as a strike. *State v. Thiefault*, 160 Wn.2d 409, 414, 158 P.3d 580 (2007). The prosecution bears the burden of proving by a preponderance of the evidence that a prior conviction constitutes a "strike" under the POAA. *Saenz*, 175 Wn.2d at 172.

The issue before us is whether in view of *Saenz*, the transfer of Mr. Bailey's juvenile case to adult court was proper. In *Saenz*, Jorge Saenz entered a guilty plea to second degree assault at the age of 15. Mr. Saenz stipulated to the waiver of a declination hearing and transfer to adult court pursuant to a plea bargain. *Saenz*, 175 Wn.2d at 171. During the 2001 guilty plea hearing, Mr. Saenz's attorney advised the court that he had two conversations with Mr. Saenz about the consequences of waiving juvenile court jurisdiction and assured the court that Mr. Saenz understood the implications of transferring the case to adult court. *Id.* Mr. Saenz also checked a box on his written guilty plea statement indicating that he understood the offense was a potential strike offense. The juvenile court approved the stipulation and transfer, but did not enter any findings regarding the declination or waiver.

6

In 2008, Mr. Saenz was convicted of two counts of first degree assault. At sentencing, the State sought to use Mr. Saenz's 2001 second degree assault conviction as a "strike" under the POAA. Mr. Saenz argued that the conviction could not be used as a strike because the court had improperly transferred jurisdiction to adult court. *Id.* The trial court held that the 2001 conviction could not be used as a strike. However, this court reversed and remanded for sentencing under the POAA, reasoning that the juvenile court did not err by failing to enter findings regarding the declination hearing because Mr. Saenz waived the hearing. *State v. Saenz*, 156 Wn. App. 866, 879, 234 P.3d 336 (2010), *rev'd*, 175 Wn.2d 167.

The Washington Supreme Court reversed in part, concluding that the transfer of Mr. Saenz's case to adult court was invalid because (1) there was no evidence the waiver of juvenile court jurisdiction was knowing and intelligent, and (2) the juvenile court failed to enter findings that declination of juvenile court jurisdiction was in the best interest of Mr. Saenz or the public. *Saenz*, 175 Wn.2d at 174-75. As to the issue of waiver, the court pointed out that there was no evidence that Mr. Saenz "understood the serious implications of having his case transferred to adult court," which included forever losing the many benefits and protections of the juvenile system. *Id.* at 177. The court held that without evidence that Mr. Saenz was informed of these rights and the legal

effect of the waiver, his waiver was invalid and, therefore, the juvenile conviction could not be counted as a strike under the POAA. *Id.*

The transfer of jurisdiction here is similarly flawed. RCW 13.40.140(1) requires that "[a] juvenile shall be advised of his or her rights when appearing before the court." Additionally, RCW 13.40.140(9) provides: "Waiver of any right which a juvenile has under this chapter must be an express waiver intelligently made by the juvenile after the juvenile has been fully informed of the right being waived."

Here, although the court informed Mr. Bailey that his guilty plea to second degree assault was a very "serious" matter that would result in "a strike on [his] record," the court did not explain that a strike conviction could later be used to sentence him to life without parole or inform him of the significant protections he would forever lose by exiting the juvenile court system. Ex. E at 6. For example, unlike adult courts, juvenile courts maintain a system of rehabilitation that the legislature intended "capable of . . . responding to the needs of youthful offenders." RCW 13.40.010(2). RCW 13.40.010(2)(f) and (j) declare as a purpose to provide necessary treatment for juveniles.

Additionally, a juvenile court is granted broader sentencing discretion for alternative confinement than adult courts. A juvenile court is allowed to alter the

8

mandated disposition if it finds that disposition would impose an excessive penalty on the juvenile and commitment of a juvenile is limited to juvenile facilities. RCW 13.40.020(12); RCW 13.40.160; chapter 72.05 RCW. Moreover, the juvenile justice system limits the use of juvenile records and prohibits confinement past the age of 21. *Saenz*, 175 Wn.2d at 173. Significant for our purposes, juvenile offenses are generally not considered crimes and do not count as strikes under the POAA. *Id.* In sum, "[a]lthough juveniles will be held accountable for their behavior, juvenile courts are vested with broad powers to provide any necessary treatment, guidance, or rehabilitation for juvenile offenders. The procedures are not as punitive as are adult criminal proceedings." *State v. Holland*, 30 Wn. App. 366, 373, 635 P.2d 142 (1981), *aff'd*, 98 Wn.2d 507, 656 P.2d 1056 (1983).

There is no evidence Mr. Bailey was informed of any of these rights and protections. While the court detailed the rights Mr. Bailey was waiving in adult court by pleading guilty, it did not mention any of the juvenile court protections listed above. Additionally, nothing in the record suggests that defense counsel informed Mr. Bailey of the juvenile court protections he would forever lose by stipulating to adult court jurisdiction. Like Mr. Saenz, Mr. Bailey had never been in adult court and there is no evidence he understood the "'vitally important statutory rights of the juvenile.'" *Saenz*,

9

175 Wn.2d at 174 (quoting *Kent v. United States*, 383 U.S. 541, 556, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966)).

Moreover, the court failed to specifically inform Mr. Bailey that an adult "strike" conviction could be used in the future to sentence him to life without the possibility of parole. While the court informed Mr. Bailey that he would have a strike on his record, it failed to explain the critical legal significance of that fact. The State argues that Mr. Bailey's written guilty plea statement is evidence that he understood the legal effect of his conviction in adult court. While Mr. Bailey initialed a box that stated the crime of second degree robbery was a "most serious offense" and that two or more convictions for most serious offenses would result in a mandatory life sentence, the court did not question Mr. Bailey on the record about his understanding of this consequence. Ex. F at 2. Alone, this deficiency may not render the waiver invalid; however, it undermines the State's position that the waiver of juvenile court jurisdiction was voluntary. In rejecting a similar argument from the State, the *Saenz* court noted:

> Saenz's acknowledgment that he read his guilty plea has no bearing on whether he understood his entirely separate waiver of rights in juvenile court. The guilty plea simply does not detail all the rights Saenz gave up by exiting the juvenile system, and the record contains no evidence that Saenz was ever informed of those rights.

*Saenz*, 175 Wn.2d at 177.

10

Under *Saenz*, checking a box on an adult guilty plea form is insufficient to establish a knowing waiver of juvenile court jurisdiction. In the absence of any evidence that Mr. Bailey was informed of the many protections he was losing by waiving a declination hearing and juvenile court jurisdiction, his waiver cannot be deemed knowing and intelligent.

The other critical defect in the transfer of juvenile court jurisdiction is the juvenile court's failure to enter specific written findings that transfer was in the best interest of Mr. Bailey or the public. Citing former RCW 13.40.110(2)[2] and (3) (1997),[3] the *Saenz* court was clear that such findings are mandatory: "Even where the parties stipulate to decline juvenile jurisdiction, the statute still requires the court to enter findings, and the court cannot transfer a case to adult court until it has done so." *Saenz*, 175 Wn.2d at 179. Jurisdiction cannot be transferred if declination is not in the best interest of the juvenile or the public, despite any agreement between the parties. *Id.* The *Saenz* court explained:

---

[2] Former RCW 13.40.110(2) provides: "The court after a decline hearing may order the case transferred for adult criminal prosecution upon a finding that the declination would be in the best interest of the juvenile or the public. The court shall consider the relevant reports, facts, opinions, and arguments presented by the parties and their counsel."

[3] Former RCW 13.40.110(3) provides: "When the respondent is transferred for criminal prosecution or retained for prosecution in juvenile court, the court shall set forth in writing its finding which shall be supported by relevant facts and opinions produced at the hearing."

> Juvenile court judges are not simply potted palms adorning the courtroom and sitting idly by while the parties stipulate to critically important facts. Instead, these judges enforce a juvenile code, "designed with [juveniles'] special needs and limitations in mind."

*Saenz*, 175 Wn.2d at 179 (quoting *Dutil v. State*, 93 Wn.2d 84, 94, 606 P.2d 269 (1980)).

The court emphasized that if the juvenile court is unable to enter findings without a declination hearing, it should order a hearing because the "ramifications of waiving juvenile court jurisdiction are as numerous as they are drastic." *Id.* at 180. Moreover, these findings must be sufficiently specific to permit meaningful review. *State v. Foltz*, 27 Wn. App. 554, 558, 619 P.2d 702 (1980) (quoting *In re Welfare of Harbert*, 85 Wn.2d 719, 724, 538 P.2d 1212 (1975)).

Here, the juvenile court failed to enter sufficiently specific findings, simply concluding that the "agreement" of the parties was "consistent with the interest of justice." Ex. B. Nothing in the record suggests that the court reviewed any of the *Kent* criteria[4] in arriving at its conclusion or independently determined that the waiver of its

---

[4] These criteria include: (1) the seriousness of the offense and whether protection of the community requires transfer to adult court; (2) whether the offense was committed in an aggressive, willful manner; (3) whether the offense was committed against a person or property; (4) the merits of the complaint; (5) the desirability of trial in one court when the juvenile's associates in the alleged offense are adults who will be tried in adult court; (6) the sophistication of the juvenile in view of his home life and emotional attitude; (7) previous history with the juvenile system; and (8) the prospects for adequate protection of the public and likelihood of reasonable rehabilitation in juvenile court.

12

No. 27489-6-III
*State v. Bailey*

jurisdiction was in the best interest of the juvenile or public. It failed to give any reasons supporting its conclusion that justice would be better served in the adult system rather than the juvenile system. Under *Saenz*, the transfer of Mr. Bailey's case to adult court is, therefore, invalid and his 1998 conviction in adult court cannot be used as a strike under the POAA.

We reverse our previous decision and remand to the trial court for resentencing.

_____
Kulik, J.

I CONCUR:

_____
Fearing, J.

---

*Kent*, 383 U.S. at 566-67.

No. 27489-6-III

KORSMO, C.J. (dissenting) — Stephen Bailey cut a deal in adult court 16 years ago that significantly limited the time he would spend in custody and substituted one "strike" offense for another. He acknowledged what he was doing at the time. His inability to avoid repeatedly committing additional strike offenses is not a basis for reconsidering that choice in this action. The decision in *State v. Saenz*, 175 Wn.2d 167, 283 P.3d 1094 (2012) is inapplicable to the facts of this case. Instead, the governing case is *State v. Knippling*, 166 Wn.2d 93, 206 P.3d 332 (2009). Our previous opinion explained why *Knippling* was satisfied in this case. Since *Saenz* did not change *Knippling* and, indeed, asserted that *Knippling* was controlling,[1] there is no basis for reversing our prior opinion. In addition, giving juvenile court judges control over the disposition of adult prosecutions is a bad policy. For both reasons, I disagree with the amended resolution of this case.

In *Knippling*, as here, the defendant was charged in adult[2] court with first degree robbery committed at age 16. 166 Wn.2d at 97. Plea negotiations resulted in a guilty plea in adult court to a reduced charge of second degree robbery, an offense over which

_____

[1] *Saenz*, 175 Wn.2d at 176.
[2] The Juvenile Justice Act of 1977, chapter 13.40 RCW distinguishes the juvenile court division of superior court from the "adult" side of superior court. *E.g.*, RCW 13.04.030; RCW 13.40.110. I will use the same nomenclature.

the juvenile court would have exclusive jurisdiction. *Id.* At sentencing six years later for a third "strike" offense, Mr. Knippling argued that the robbery conviction should not be counted as a "strike" for persistent offender purposes absent proof that superior court had obtained jurisdiction from juvenile court. *Id.* at 97-98. The Washington Supreme Court agreed and concluded that the bare court judgment and sentence was insufficient evidence to establish that the case was properly in adult court. *Id.* at 101-02.

Unlike *Knippling*, the record in this case shows exactly how the adult court retained jurisdiction over the case—Mr. Bailey stipulated to the jurisdiction in conjunction with the plea agreement that reduced the charge. He received a substantially reduced sentence[3] and the prosecutor obtained without need of trial a "strike" on the record of an apparently dangerous young offender.[4] He could not have received the benefit of the bargain without the superior court retaining the case by his agreement; the court had no authority to amend the information to the lesser offense without Mr. Bailey's consent to jurisdiction. There is nothing uncommon or untoward in this

---

[3] Even in prosecutions originating in juvenile court, it is not uncommon to see an offender seek to have a case transferred to adult court where the sentence range will be shorter because the prior juvenile history will not count in the adult sentence. The youthful offender has the right to seek declination of juvenile court jurisdiction. RCW 13.40.110(1).

[4] The 1998 offense was the second "strike" offense committed by Mr. Bailey while still a youth. He already had a 1996 second degree robbery offense that had been handled in juvenile court.

2

decision. Mr. Bailey received a distinct short-term benefit that was potentially offset by its long-term consequences in the event that he failed to straighten his life out.

Nothing in *Saenz* changes that calculus or the ruling in *Knippling*. Instead, *Saenz* involved a totally different scenario by which the case moved from juvenile to adult court. In *Saenz* the case originated as a juvenile court prosecution and the parties agreed to a guilty plea in adult court to second degree assault, another "strike" offense; the defendant was then 15. 175 Wn.2d at 171. The case was removed to adult court without either a declination hearing or a waiver of juvenile court jurisdiction. *Id.* When the prosecution later attempted to use that offense as one of the predicates for a persistent offender sentence in adult court, the court concluded that the absence of a declination hearing or a valid waiver of jurisdiction, the offense did not constitute a "strike" in subsequent persistent offender scoring. *Id.* at 176, 181. In the course of its analysis, the *Saenz* majority explained the important benefits a youthful offender gives up by agreeing to leave juvenile court. *Id.* at 176-80.

The majority unfortunately seizes upon some of that language and substitutes it for the *Saenz* holding that an unexplained transfer of jurisdiction is insufficient to allow use of the prior offense in a persistent offender sentencing. However, because *Saenz* arose from a totally different factual setting, I fear that the majority places too much emphasis on the discussion there about the process necessary to move a case from juvenile to adult

3

court as opposed to the process necessary to retain a case in adult court. *Saenz* did not import the one into the other.

The two cases are totally different in factual circumstances. In *Saenz*, the defendant, *charged in juvenile court,* was offered a plea bargain in adult court; to accept it the case had to be moved to adult court. Mr. Bailey, however, faced the opposite situation. He already was in adult court facing trial on a greater offense (and risking substantially lengthier incarceration) and was offered a disposition in adult court to a less serious offense and much less incarceration. To facilitate that deal he needed to waive juvenile court jurisdiction in order for adult court to have authority even to reduce the charge and accept the plea. RCW 13.40.140(9) provides the framework for *how* the *statutory* rights conveyed by our juvenile code are waived. There "must be an express waiver intelligently made by the juvenile after the juvenile has been fully informed of the right being waived." RCW 13.40.140(9).

That statutory requirement was met here. A written waiver and findings were accepted by the court. In part, that agreement states:

> The defendant and his attorney herein indicate agreement that the
> prosecution of the amended information accusing the defendant of the
> crime of Second Degree Robbery with a deadly weapon shall be manifested
> in the adult division of the Yakima County Superior Court. The defendant
> and his attorney specifically consent to waiver of any and all rights under
> RCW 13.40.110 (or any other applicable statute) to declination hearing.
> The court finds that the agreement of the parties is consistent with
> the interest of justice.

4

Ex. B. The agreement was signed by the judge, prosecutor, defense counsel, and Mr. Bailey. *Id.* Mr. Bailey knowingly waived his right to a hearing in juvenile court on the propriety of the case continuing in adult court on the lesser offense.

*Saenz* discussed the necessity of a juvenile court entering findings and making an express determination, if declining jurisdiction, that declination is in the best interest of the juvenile *or* of the public in accordance with current RCW 13.40.110(3) and (4). *Saenz*, 175 Wn.2d at 179. The court noted that the statute required that the "best interest" finding be made even when the parties waive the declination hearing. *Id.* at 179-80. Without these findings, the court "cannot transfer a case to adult court." *Id.* at 179.[5]

The majority errs in applying this transfer standard to the retention of jurisdiction by the adult court in Mr. Bailey's case. There was no transfer by the juvenile court and, thus, no need for entry of the statutorily mandated findings. If the case had begun in the juvenile court like *Saenz*, then Mr. Bailey needed to waive his right to remain in juvenile court and the judge would need to enter appropriate findings. Instead, he was in adult court and was going to stay there. He, however, needed and wanted to empower the adult court to enter a lenient judgment that it otherwise had no authority to do. He did that by waiving his right to a hearing in juvenile court. There was no need to acknowledge and

---

[5] Even if it had been necessary to make a "best interest" finding, the last sentence of the waiver would certainly support it. The defendant's agreement with the action showed that it was in his best interest. The finding that the agreement was "consistent with the interests of justice" is at least the equivalent of finding that the agreement was in

waive the rights attendant to a juvenile court prosecution since he was not facing a criminal action in juvenile court. There was no need to do anything other than confirm that Mr. Bailey knew he had the right to have a hearing there and that he desired to give up that right. There was a knowing waiver of that right in this case.

While that analysis explains why we should be affirming the persistent offender sentence, I also note that the majority's result is contrary to the best interest of most defendants who are similarly situated to Mr. Bailey. Youthful offenders charged with the most serious felonies are automatically outside the scope of the juvenile system. If the prosecutor decides that youth or some other mitigating factor suggests that the defendant should be treated as an adult but not be punished as severely as an older person who committed the same crime, the majority decision does not permit the prosecutor directly to do so by filing reduced charges. Instead, he or she loses control of the charging power and cedes that authority over to a juvenile court judge who will decide whether the prosecutor's desire for a moderated adult disposition is appropriate. Why should a juvenile judge weigh in on the propriety of a jointly agreed adult court sentence? There is no statutory requirement to do so (unlike when a case is originally within the jurisdiction of the juvenile court) and there is no good policy reason why the juvenile judge should be involved in the disposition of an adult case by an adult court judge. Encouraging this unnecessary endeavor benefits no one, least of all the offender who

the public interest.

could see his chance for mercy dashed by an outsider. The prosecutor likewise could see his adult court case hijacked to juvenile court by a judicial officer who would essentially be exercising the executive prosecutorial function of deciding what charges will be filed and where they will be filed.

A juvenile court judge has authority only over a juvenile court case. The potential exercise of authority over an adult prosecution by a juvenile court judge will only discourage a prosecutor from showing charging leniency to the serious youthful offender. No one benefits from such an approach.

*Saenz* does not apply to this case. Moreover, the policies at issue when a juvenile court must decide to decline its own jurisdiction are not in play when an adult court decides that the parties have reached an appropriate resolution of their case. For both reasons, I respectfully dissent.

Korsmo, C.J.