IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39348-8-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| STEPHEN ANTHONY BAILEY, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Stephen Bailey appeals his 288-month sentence that was imposed during a 2022 *Blake*[1] resentencing hearing. We affirm his sentence, but remand for the limited purposes of striking the $500 crime victim penalty assessment (VPA) from the judgment and sentence, and correcting two scrivener's errors.

---

[1] *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021).

BACKGROUND

In 2008, a jury convicted Mr. Bailey of first degree assault and witness intimidation, both with findings of domestic violence. At his original sentencing hearing, Mr. Bailey was deemed a persistent offender and received a life sentence. This sentence was reversed on appeal and the case was remanded for resentencing. *State v. Bailey*, 179 Wn. App. 433, 335 P.3d 942 (2014). At the 2014 resentencing hearing, Mr. Bailey's sentencing range was calculated as 240 to 318 months. Mr. Bailey's offender score included a 2002 conviction for possession of a controlled substance. The resentencing court imposed a total sentence of 300 months of incarceration.

While Mr. Bailey was serving his sentence, the Washington Supreme Court decided *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021). The *Blake* decision held that Washington's statute criminalizing simple possession of controlled substances was void because it violated the due process clauses of the state and federal constitutions. *Blake* had a retroactive effect. One of the results of *Blake* was that defendants serving criminal sentences that had been inflated based on prior convictions for possession of a controlled substance were entitled to resentencing. Mr. Bailey's case was one of many impacted by *Blake*. As a result, he was scheduled for a second resentencing hearing in October 2022.

At the time of the 2022 resentencing hearing, neither the original 2008 sentencing judge nor the 2014 resentencing judge were available to handle Mr. Bailey's case. As a result, the *Blake* resentencing was handled by a judicial officer who was new to the case.

Mr. Bailey appeared for his resentencing remotely, via video technology. At the onset of the hearing, Mr. Bailey's attorney noted Mr. Bailey was housed at the local jail and wanted to be present in the courtroom for his hearing. The attorney requested Mr. Bailey be brought to court, noting Mr. Bailey had a "list of notes" he wanted counsel to review during the hearing. 1 Rep. of Proc. (RP) (Oct. 26, 2022) at 18. The State objected to Mr. Bailey's request, noting it did not see the necessity of Mr. Bailey being brought into the courtroom. The court commented Mr. Bailey could participate in the hearing through the video technology. It denied Mr. Bailey's request to be brought into the courtroom, explaining it had "security concerns about Mr. Bailey" because there was "a courtroom full of people and not enough officers." *Id.* Mr. Bailey's attorney responded, "Understood." *Id.* The attorney then advised Mr. Bailey that he was going to stay at the jail during the proceeding, but the attorney would be able to take a break for a private consultation with Mr. Bailey if necessary.

The court went forward with resentencing. The State reviewed the case's procedural history and pointed out Mr. Bailey's sentencing range had not changed as a result of *Blake*—his offender score remained maxed out and his sentencing range was

3

still 240 to 318 months. The State requested the court reimpose the prior sentence of 300 months.

During Mr. Bailey's presentation, defense counsel elicited brief testimony from the victim. In response to counsel's questions, the victim stated she was not afraid of Mr. Bailey, she loved him, and she did not think he needed to be incarcerated for as long as the State had requested because he was "getting domestic violence classes." *Id*. at 25. While the victim was physically present in the courtroom, most of the victim's statements appear to not have been "picked up on the record" and the court said it could not hear "a word" the victim was saying. *Id*. The court asked defense counsel for a summary. Counsel stated, the victim "still has strong, good feelings for Stephen Bailey and she's talking about hoping the Court—she would rather he was out today is what she was saying. She is not in fear of [Mr. Bailey]." *Id*. Defense counsel added the victim had discussed "domestic violence classes and other things [Mr. Bailey] was doing." *Id*. at 26.

Defense counsel asked for a low-end sentence,[2] noting Mr. Bailey had certificates of completion for domestic violence and other classes. Counsel also represented that Mr. Bailey wanted to be done with gangs, but the separation process was difficult while

---

[2] Defense counsel claimed Mr. Bailey's sentencing range should be lowered based on *Blake*, but counsel did not proffer any substantive arguments against the State's offender score calculation.

he remained in custody. Defense counsel also asked the court to strike all nonmandatory legal financial obligations.

After hearing from defense counsel, the State introduced testimony from a detective who had worked on Mr. Bailey's case. The detective recalled there had been a lot of "manipulation" in the relationship between Mr. Bailey and the victim. *Id*. at 32. The detective had listened to hundreds of jail calls between Mr. Bailey and the victim as part of the obstruction investigation. According to the detective, there was a lot of "mental abuse" between Mr. Bailey and the victim. *Id*. at 33.

The State also made some evidentiary proffers, including information from the Department of Corrections (DOC) that Mr. Bailey had received an infraction in May 2022 for instructing an out-of-custody individual on how to introduce contraband into the prison. The State's attorney also proffered that, during his work on Mr. Bailey's criminal trial, he recalled reviewing a phone call between Mr. Bailey and the victim during which Mr. Bailey told the victim "to prostitute herself" for bail money. *Id*. at 34-35.

Mr. Bailey then addressed the court. He admitted to hurting the victim and apologized for his actions. But he also claimed he was actually innocent of his assault conviction because he had never actually choked the victim. Mr. Bailey discussed the challenges he experienced in his youth, his efforts to distance himself from gangs, and

5

the progress he had made in custody by working and taking domestic violence awareness classes. Mr. Bailey assured the court he was not the same person he was at the time of his offense conduct.

After hearing from Mr. Bailey and allowing defense counsel time to review the State's evidence, the court proceeded to imposition of sentence. The court noted that Mr. Bailey's sentencing range was 240 to 318 months and that it was the court's practice to start at the middle of the range. The court recognized it was new to Mr. Bailey's case and stressed its sentencing decision would be "based upon the evidence that's been presented to me today." *Id*. at 53. The court expressed skepticism that Mr. Bailey had changed his manipulative ways, given: (1) the DOC infraction received only five months prior to resentencing for attempting to influence an individual to move contraband into the prison, and (2) the manipulating and controlling nature of the hundreds of prison calls from Mr. Bailey to the victim and the fact that she was in court that day in support of Mr. Bailey. Nevertheless, the court decided to remove 12 months from Mr. Bailey's prior sentence based on *Blake*. The court also decided to shorten the lifetime no-contact order between Mr. Bailey and the victim and to eliminate unnecessary legal financial obligations. The final sentence imposed by the court included a total term of 288 months in prison, and a 25-year no-contact order. The only financial obligation imposed by the court was the then-mandatory $500 VPA.

After the court pronounced sentence, Mr. Bailey stated he had some objections he wanted to place on the record. During this process, Mr. Bailey commented that he wished he could have "had the opportunity to stand next to [his] attorney" during the sentencing hearing. *Id*. at 63-64. The court told Mr. Bailey he had been advised his attorney could come back to speak with him if necessary. Mr. Bailey then asked for a pause in the proceedings to confer with counsel. The court granted this request. When the proceedings resumed, defense counsel placed Mr. Bailey's legal objections on the record.[3] Counsel also stated the victim "was disappointed that she didn't get to speak, but it seemed clear to [counsel] that was not gonna bear fruit." *Id*. at 66. Thus, counsel preserved an objection to the victim's "absence from further participation." *Id*.

ANALYSIS

Mr. Bailey appeals the court's resentencing decision, raising five assignments of error: (1) the court failed to conduct a de novo resentencing, (2) the court violated Mr. Bailey's "constitutional right to be physically present" at his resentencing hearing by not allowing him to appear in person, (3) the court violated the victim's constitutional right to speak at sentencing, (4) new legislation requires striking the VPA, and (5) the judgment and sentence form contains scrivener's errors. Appellant's Opening Br. at 2.

---

[3] The nature of the legal objections are not relevant to the issues raised on appeal.

We address each claim in turn.

## 1. *De novo sentencing hearing*

Mr. Bailey argues the trial court failed to conduct a de novo sentencing hearing, as required by *State v. Dunbar*, 27 Wn. App. 2d 238, 532 P.3d 652 (2023). We disagree.

In *Dunbar*, we held that when a trial court conducts a resentencing under *Blake*, the hearing must be de novo, not merely a reimposition of the prior sentence. At resentencing, the court may consider evidence of "any matters relevant to sentencing, even those that may not have been raised at the first sentencing hearing." *Id*. at 248.

The record shows Mr. Bailey received a full, de novo resentencing hearing. Unlike *Dunbar*, the court here did not simply defer to the sentence previously imposed in 2014 by a separate judge. Instead, the court listened to new evidence and stated it was basing its decision on the evidence presented at the resentencing hearing. The court considered Mr. Bailey's arguments regarding postsentencing rehabilitation, but found them unconvincing. Nevertheless, the court exercised its discretion to lower Mr. Bailey's term of incarceration and the duration of the no-contact order. This was the type of independent sentencing decision contemplated by our decision in *Dunbar*.

Mr. Bailey argues he was denied a de novo hearing because the court did not allow him to be physically present in the courtroom and because the court limited the victim's right to speak. These arguments pertain to the issue of whether the court committed

legal errors during the resentencing. They do not pertain to whether or not the hearing

was conducted de novo. We address the issues of physical presence and the victim's right

to speak as independent claims of error, addressed below.

*2. Physical presence in courtroom*

Citing *State v. Ramos*, Mr. Bailey argues the videoconferencing procedure

employed by the court violated his "constitutional right to be present at sentencing,

including resentencing." 171 Wn.2d 46, 48, 246 P.3d 811 (2011) (per curiam). *Ramos*

held that when a resentencing decision is not merely ministerial, but instead requires the

exercise of discretion, a court may not handle the case simply by making corrections to

the judgment and sentence. Instead, a resentencing hearing must be held where the

defendant "shall be afforded the opportunity to be present and heard." *Id*. at 49.

Unlike the present case, *Ramos* did not involve a virtual hearing. Rather, the issue

in *Ramos* was the defendant had not been present at all for the court's resentencing

decision.

Mr. Bailey cites no authority for the proposition that a virtual hearing constitutes a

per se violation of the constitutional right to presence. This claim is not patently obvious.

Unlike what happened in *Ramos*, Mr. Bailey had the ability to be heard and to interact

9

with the court throughout his resentencing hearing.[4] The mere fact that Mr. Bailey

appeared virtually for his resentencing hearing does not directly place his case at odds

with the rule announced in *Ramos*.

As the appellant, it is Mr. Bailey's burden to show the existence of legal error.

"'[W]e are not in the business of inventing unbriefed arguments for the parties sua

sponte.'" *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 138, 267 P.3d 324 (2011)

(*quoting State v. Studd*, 137 Wn.2d 533, 547, 973 P.2d 1049 (1999)).  Researching

and vetting possible legal arguments on a litigant's behalf undermines judicial neutrality.

It is also detrimental to the development of well-reasoned jurisprudence, which should

be informed by competing viewpoints and the crucible of litigation. At times, it may be

appropriate for the court to consider arguments not raised by the parties. But doing so

is generally only proper "when there is no dispute about the law." *Alverado v. Wash.

Pub. Power Supply Sys.*, 111 Wn.2d 424, 429-30, 759 P.2d 427 (1988). Here, the law is

not beyond dispute. Despite the dissent's apparent 50-state review, it seems no court in

this country has ever held that an appearance by video constitutes a per se violation of

the constitutional right to presence. We decline to reach this type of momentous issue on

---

[4] The court also never muted Mr. Bailey or limited his ability to be seen and heard. This contrasts with the Texas case cited by the dissent. *See Hughes v. State*, 691 S.W.3d 504 (Tex. Crim. App. 2024).

our own, without the parties' suggestion or input.

Rather than advocate for arguments on behalf of Mr. Bailey, we prefer the role of neutrality. The general rule in our court is that when a party merely gives passing treatment to an issue, or fails to provide reasoned argument, judicial consideration is not warranted. *Atkerson v. Dep't of Child., Youth & Fams.*, 29 Wn. App. 2d 711, 732 n.4, 542 P.3d 593, *review granted*, 3 Wn.3d 1001, 549 P.3d 113 (2024)). We invoke this rule to decline review of Mr. Bailey's constitutional claim.

Mr. Bailey also appears to argue the trial court's sentencing procedure violated CrR 3.4. Under CrR 3.4(e)(2), the court may conduct a sentencing hearing by videoconference "only by agreement of the parties."[5] The rule makes no exception for safety concerns. Here, it is undisputed Mr. Bailey objected to the videoconference procedure. Thus, we agree with Mr. Bailey that the resentencing hearing violated the plain terms of the court rule.

Although Mr. Bailey's resentencing hearing occurred in violation of the court rule, this does not end our analysis. When it comes to nonconstitutional errors such as a court rule violation, relief on appeal turns on whether the defendant can show prejudice. *See State v. Barry*, 183 Wn.2d 297, 304, 352 P.3d 161 (2015). Prejudice in this context

---

[5] CrR 3.4(e)(1) provides greater authority for videoconference proceedings for preliminary appearances, arraignments, bail hearings, and trial setting hearings.

requires showing a reasonable probability of a material impact on the proceedings.

*State v. Lupastean*, 200 Wn.2d 26, 52-53, 513 P.3d 781 (2022).

Mr. Bailey fails to make the requisite showing of prejudice. His briefing makes

no argument for prejudice; he simply claims he is entitled to resentencing. Our own

assessment of the record indicates Mr. Bailey was not prejudiced by the violation of

CrR 4.3(e)(2).[6] If anything, Mr. Bailey appears fortunate to have received a reduction

in sentence, despite the fact that (1) *Blake* did not impact his sentencing range, and

(2) the court rejected Mr. Bailey's claim of rehabilitation. Given the lack of prejudice,

Mr. Bailey is not entitled to yet another resentencing hearing simply based on a violation

of CrR 3.4.

*3. Violation of victim's rights*

Mr. Bailey argues the court violated the victim's statutory and constitutional

rights to address the court during the resentencing hearing. *See* WASH. CONST. art. I,

---

[6] The dissent speculates that had Mr. Bailey appeared in person, he may have been able to help his attorney raise legal challenges to his sentencing range. *See* Dissent at 29-31. It is unclear why Mr. Bailey's physical presence would have been necessary for counsel to assert legal arguments. The record shows that Mr. Bailey and his trial counsel had numerous opportunities to meet and confer prior to the resentencing hearing. Presumably, Mr. Bailey would have been able to share his legal concerns with counsel prior to the hearing. Furthermore, if Mr. Bailey had valid legal arguments in support of a lower sentencing range, those could have been raised on appeal. They were not. It appears the reason neither Mr. Bailey's trial attorney nor his sentencing attorney have challenged the legality of the sentencing range is that there is no basis for doing so.

§ 35; former RCW 7.69.030(14) (2022); RCW 9.94A.500(1). Mr. Bailey fails to cite any authority showing he has standing to assert a violation of the victim's rights. This claim therefore fails to warrant further judicial review or relief.[7]

*4. VPA*

After Mr. Bailey's resentencing hearing, the legislature amended the VPA statute by passing Engrossed Substitute House Bill 1169, with those amendments taking effect July 1, 2023. *See State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023) (citing LAWS OF 2023, ch. 449, § 1). The statute now prohibits courts from imposing a VPA on defendants found to be "indigent" as defined by RCW 10.01.160(3), and requires the trial court to waive any VPAs imposed before the effective date, on the defendant's motion, if the defendant is unable to pay. *See* RCW 7.68.035(4), (5)(b). Although the amendments did not take effect until after Mr. Bailey's resentencing hearing, they apply prospectively to cases on direct review. *See Ellis*, 27 Wn. App. 2d at 16 (citing *State v. Ramirez*, 191 Wn.2d 732, 748-49, 426 P.3d 714 (2018)).

The parties agree that Mr. Bailey is indigent and therefore entitled to relief from the VPA. We concur. We therefore remand with instructions to strike the VPA from

---

[7] We also note the trial court never refused to hear from the victim. The court merely stated it could not hear what the victim was saying and asked for a summary. During the resentencing hearing, Mr. Bailey never suggested any other options for conveying the victim's statements to the court.

Mr. Bailey's judgment and sentence.

*5. Scrivener's error*

Mr. Bailey asserts there are scrivener's errors on his 2022 judgment and sentence form. Specifically, he points to inconsistencies with the 2014 amended judgment and sentence form pertaining to dates of his prior convictions for third degree rape and taking a motor vehicle without permission. The State concedes there are scrivener's errors on the judgment and sentence form requiring correction. We accept this concession and remand for this purpose.

CONCLUSION

Mr. Bailey's sentence is affirmed. We remand for the limited purposes of striking the VPA and correcting scrivener's errors on the judgment and sentence form. Because the scope of remand is limited to ministerial matters, Mr. Bailey's presence is not required.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

I CONCUR:

_____
Cooney, J.

14

No. 39348-8-III

FEARING, J. (dissenting) — The resentencing court breached Stephen Bailey's constitutional right to appear in person during the resentencing hearing. In turn, the State fails to show constitutional harmless error. I would remand for a new resentencing hearing.

The majority does not necessarily disagree with my conclusion. The majority instead declines to entertain Stephen Bailey's constitutional argument because, in the majority's view, Bailey's appellate counsel pens a deficient brief.

BACKGROUND

This appeal arises out of Stephen Bailey's motion, filed in 2021, for a resentencing following the Supreme Court's decision in *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021). In *State v. Blake*, the Washington Supreme Court declared Washington's strict liability drug possession statute that criminalized unintentional, unknowing possession of controlled substances in violation of state and federal due process clauses. As a result, superior courts vacated all earlier simple drug possession convictions. In turn, the courts needed to modify offender scores that relied on a drug possession conviction.

On October 26, 2022, the superior court entertained Stephen Bailey's motion to vacate his 2002 drug possession conviction, amend his offender score, and resentence him on his 2008 convictions for one count of assault in the first degree, domestic violence, and one count of intimidating a witness, domestic violence. Bailey appeared at the motion hearing by Zoom, despite being in an adjacent jail. As the hearing began, Bailey's counsel asked that Bailey be present in the courtroom. Counsel added that his client wrote notes for him to review for the hearing and the client needed to deliver the notes to him in the courtroom. The State downplayed the importance of a *Blake* hearing and contended Bailey's presence in the courtroom was not needed.

The resentencing court summarily denied the request of Stephen Bailey to appear in person inside the courtroom based on security concerns. The court noted the presence of many others in the courtroom and a dearth of security officers.

After the superior court denied defense counsel's request to bring Stephen Bailey into the courtroom, counsel informed Bailey, through the videoconference facilities on which others listened, that the judge ruled Bailey would remain in the jail. Defense counsel and Bailey publicly spoke to one another:

> MR. KLEIN [Defense counsel]: Look, the way it's gonna work is they're gonna keep you there. If you need to talk to me in private, I'll come back and confer with you as the hearing goes. Is that understood?
> MR. BAILEY: Yeah, well I got the stuff that you asked me to write for you.

1 Report of Proceedings (RP) (Oct. 26, 2022) at 19.  Neither the court nor counsel informed Bailey as to how to register a desire to speak with his counsel.  The court did not indicate if and when, during the hearing, Bailey could confer with his attorney.

After Stephen Bailey informed his attorney that he held, in the jail room, the notes written for counsel, Bailey and his counsel further spoke on the record:

> MR. KLEIN [Defense counsel]: Okay.  Yes, so Stephen someone is—Blockus (sp) is gonna, I get the rank wrong every time, but the big boss is gonna come—
> MR. BAILEY: Okay.
> MR. KLEIN: —get that to me.

1 RP (Oct. 26, 2022) at 19.  The record does not confirm whether someone delivered Bailey's notes to his lawyer.

During the October 26 hearing, the State summarized earlier proceedings and discussed the correct offender score.  The State asserted that, despite the reduction of Stephen Bailey's offender score by one point, his score remained nine-plus.  In turn, his standard sentencing range remained in the window of 240 to 318 months.  The State asked the resentencing court to resentence Bailey to the same sentence imposed in 2014, 300 months for the assault and 75 months for intimidating a witness, with the two sentences to run concurrently.

Stephen Bailey, through counsel, argued his offender score was 8, because the previous judgment and sentence read that his offender score was nine, not nine-plus.

According to Bailey, the State was estopped to claim that the score had earlier been nine-plus, because the State had never corrected the previous judgment. Bailey, through counsel, claimed his standard sentencing range was 209 to 277 months. Bailey asked for the low end of this range.

The resentencing court permitted the victim, Rosa Botello, to speak. During Botello's soliloquy, the court indicated it could not hear her and asked defense counsel to summarize what she said. I do not understand why the court could not hear Botello since Botello was present in the courtroom. According to counsel, Botello, who was Stephen Bailey's girlfriend, stated she loved him and no longer feared him.

During the resentencing hearing, defense counsel listed efforts made by Stephen Bailey to rehabilitate and educate himself, including domestic violence classes and exiting from gang affiliation. In response, a law enforcement officer reminded the court of Bailey's violent relationship with the victim and his 457 violations of a no-contact order by calling the victim while in jail. The prosecution mentioned a recent instance when, while in prison, Bailey attempted to convince a woman in Seattle into concealing and sending him contraband by mail.

After argument of counsel, Stephen Bailey addressed the resentencing court. RP 35-46. Counsel then reargued their client's respective positions. During the middle of the colloquy between both counsel and the resentencing court, Bailey interrupted, not to speak with his counsel, but to correct the court about the nature of prison infractions.

4

Bailey's counsel interrupted Bailey and told him to cease talking. The court then asked a question, and Bailey began to answer. Bailey's counsel then again advised Bailey to remain silent. Before the resentencing court's ruling, Bailey never asked to confer with his attorney.

During its ruling, the resentencing court expressed concern that Stephen Bailey continued to manipulate the victim and others. The court adjudged Stephen Bailey's offender score to be nine with a sentencing range of 240 to 318 months. The court sentenced Bailey to 288 months for domestic violence assault and 75 months for domestic violence intimidation, with the sentences to run concurrently. The court also reduced a lifetime ban of contact with Rosa Botello to a 25-year no-contact order.

Immediately after the resentencing court ended its ruling, Stephen Bailey attempted to prevail on the court to modify its opinion. Bailey claimed that he served, as a result of the drug possession conviction, an extra year on the 2003 rape conviction and he should get a twelve-month deduction in his sentence for this time. He argued with the court about its refusal to discontinue the no-contact order. Bailey's counsel interrupted Bailey a third time. Counsel then commented about his failure to mention Bailey's request for a reduction of one year in the sentence because of the lengthened rape sentence. The court declined the reduction stating "it's water under the bridge." 1 RP (Oct. 26, 2022) at 60.

The resentencing court next advised Stephen Bailey of his right to appeal. When the court asked Bailey if he had any questions about the right to appeal, his counsel injected, told Bailey not to speak, and informed Bailey that he would see Bailey the next day. Bailey, without any input from counsel, began to list additional objections to the resentencing court's rulings. The court interrupted Bailey and remarked that the court had already heard argument. Bailey responded:

> Oh, I was just trying to put it on the record. Again, I'm not—I'm not an attorney. I don't—I really don't know much of the law.

1 RP (Oct. 26, 2022) at 63.

Stephen Bailey continued to raise objections to the proceeding. A colloquy between Bailey, the court, and Bailey's attorney ensued:

> MR. BAILEY: . . . I—I wish I would have had the opportunity to stand next to my attorney so I could speak with him during the—during the sentencing hearing. However, I'm over here and he's over there and this is all over the computer. So, I kind of feel as if I'm alone in this in some type of way.
> THE COURT: Mr. Bailey, you were advised that if you needed to speak with him or if you needed to pass notes or so forth, that Mr. Klein would come back and see you. You understood that.
> MR. BAILEY: Okay. So, could we have a pause in this for a minute so I can speak with my attorney momentarily. Just there's some things that I would like to get put on the record. So, perhaps I could speak with him to see if that –
> THE COURT: Do you wish to do so, Mr. Klein?
> MR. KLEIN [Defense counsel]: I think I have to.
> THE COURT: We'll take a pause at this point in time. . . .

1 RP (Oct. 26, 2022) at 63-64.

6

The resentencing court recessed. On resumption of the hearing, Stephen Bailey's counsel stated that Bailey objected to his juvenile conviction for robbery being counted as two points and the resentencing court's refusal to consider the 2000 convictions for attempting to elude and taking a motor vehicle without permission as the same criminal conduct. Counsel also expressed Rosa Botello's and Stephen Bailey's disappointment that Botello could not "speak." 1 RP (Oct. 26, 2022) at 66.

LAW AND ANALYSIS

On appeal, Stephen Bailey assigns five errors to the resentencing procedure. First, the resentencing court failed to afford him a de novo hearing. Second, the court denied him the constitutional right and the entitlement under court rule to appear in person inside the courtroom during the hearing. Third, the resentencing court denied victim Rosa Botello the right to be heard. Fourth, the court erred when imposing a crime victim penalty assessment. Fifth, the judgment and sentence contains scrivener's errors.

I conclude, consistent with the majority, that the resentencing procedure contravened Stephen Bailey's rights under CrR 3.4 to appear in person at the hearing. More importantly, contrary to the majority, I conclude the procedure breached Bailey's constitutional right to a physical appearance in the courtroom and the State fails to show constitutional harmless error. These conclusions concern assignment of error two. I agree with the majority's rulings in response to assignments of error one, four, and five. I do not address assignment of error three.

7

During the resentencing hearing, Stephen Bailey, through his counsel and when speaking on his behalf, decried the inability to be present in the courtroom in order to have the benefit of constant collaboration with his counsel. Bailey, throughout his two appellate briefs, also complains about not being able to constantly confer with his counsel because the two were logistically separated during the resentencing hearing. Nevertheless, he does not explicitly argue on appeal that the videoconference hearing contravened his right to assistance of counsel under the Sixth Amendment to the United States Constitution or article 1, section 22 of the Washington Constitution. Since the right to a physical appearance alone merits another resentencing hearing, I need not decide whether the remote hearing violated the right to assistance of counsel. Otherwise, I would direct the parties, pursuant to RAP 12.1(b), to address the right of assistance of counsel.

The right to be present in person and the right to assistance of counsel intertwine in the context of a defendant appearing remotely. The Court of Criminal Appeals of Texas noted this entanglement in *Hughes v. State* when it wrote:

> Ordinarily, when all of the parties are physically present, a defendant's disruptions would earn rebukes and orders to be quiet, such as those that [Darren Hughes] twice earned over the Zoom teleconference without being muted. The difference however is that in the ordinary case a defendant that is told to be quiet would be physically next to defense counsel and could have quietly talked to counsel or poked and prodded counsel, passed notes, or otherwise indicated to counsel that he wanted to talk.

*Hughes v. State*, 691 S.W.3d 504, 522 (Tex. Crim. App. 2024).

The parties do not dispute the facts underlying the resentencing hearing process. The question of whether the procedure violated Stephen Bailey's right to assistance of counsel remains one of law that can readily be resolved. An appellate court holds inherent discretionary authority to reach an issue not briefed by parties if the issue is necessary for decision. *State v. Aho*, 137 Wn.2d 736, 740-41, 975 P.2d 512 (1999); *City of Seattle v. McCready*, 123 Wn.2d 260, 269, 868 P.2d 134 (1994). The court may raise an issue sua sponte and rest its decision on that issue. RAP 12.1(b); *Greengo v. Public Employees Mutual Insurance Co.*, 135 Wn.2d 799, 813, 959 P.2d 657 (1998) (plurality opinion). When determining whether to exercise this authority, the court discerns whether the issue is a purely legal one. *City of Seattle v. McCready*, 123 Wn.2d 260, 269 (1994). Generally, the court requests additional briefing, but, if briefing is not necessary to a full and fair resolution of the issue, the court will, in the rare case, decide the issue without additional briefing. RAP 12.1(b); *State v. Aho*, 137 Wn.2d 736, 741 (1999); *Greengo v. Public Employees Mutual Insurance Co.*, 135 Wn.2d 799, 812-13, (1998); *Falk v. Keene Corp.*, 113 Wn.2d 645, 659, 782 P.2d 974 (1989); *Alverado v. Washington Public Power Supply System,* 111 Wn.2d 424, 430, 759 P.2d 427 (1988).

In *State v. Aho*, 137 Wn.2d 736 (1999), Fonua Aho challenged the constitutionality of the application of child molestation statute to offenses for which a substantial portion of charging period predated the statute's effective date. Both

9

parties analyzed the question under the ex post facto clauses of the state and federal

constitutions. Our Supreme Court, without asking for input from the parties, resolved the

appeal on a due process violation and reversed the conviction. This court could similarly

decide Bailey's appeal under the Sixth Amendment right to assistance of counsel.

Stephen Bailey employs two pillars to pillory his inability to attend the

resentencing hearing inside the courtroom: CrR 3.4 and the Sixth Amendment right to

be present. The State devotes scant attention to whether the videoconference hearing

violated a court rule or constitutional demands. The State concentrates on the question

of whether Stephen Bailey shows prejudice because of his remote appearance at the

resentencing hearing.

*Issue 1: Whether the resentencing procedure infringed on Stephen Bailey's*

*rights under CrR 3.4*

*Answer 1: Yes.*

I first address the court rule. CrR 3.4 declares:

> (a) Presence Defined. Unless a court order or this rule specifically
> requires the physical presence of the defendant, the defendant may appear
> remotely or through counsel. Appearance through counsel requires that
> counsel either (i) present a waiver the defendant has signed indicating the
> defendant wishes to appear through counsel or (ii) affirm, in writing or in
> open court, that this is the defendant's preference.
> (b) When Necessary. The defendant shall be present physically or
> remotely (in the court's discretion) at the arraignment (if one is held), at
> every stage of the trial including the empaneling of the jury and the return
> of the verdict, and at the imposition of sentence, except as otherwise

> provided by these rules, or as excused or excluded by the court for good cause shown.
>
> . . . .
>
> (e) Videoconference Proceedings.
>
> (1) Authorization.  Preliminary appearances held pursuant to CrR 3.2.1, arraignments held pursuant to this rule and CrR 4.1, bail hearings held pursuant to CrR 3.2, and trial settings held pursuant to CrR 3.3, may be conducted by video conference *in which all participants can simultaneously see, hear, and speak with each other*.  Such proceedings shall be deemed held in open court and in the defendant's presence for the purposes of any statute, court rule or policy.  All video conference hearings conducted pursuant to this rule shall be public, and the public shall be able to simultaneously see and hear all participants and speak as permitted by the trial court judge.  Any party may request an in person hearing, which may in the trial court judge's discretion be granted.
>
> (2) Agreement.  Other trial court proceedings including the entry of a Statement of Defendant on Plea of Guilty as provided for by CrR 4.2 may be conducted by video conference only by agreement of the parties, either in writing or on the record, and upon the approval of the trial court judge pursuant to local court rule.
>
> (3) Standards for Video Conference Proceedings.  The judge, counsel, all parties, and the public must be able to see and hear each other during proceedings, and speak as permitted by the judge.  *The video and audio should be of sufficient quality to ensure participants are easily seen and understood.  Video conference facilities must provide for confidential communications between attorney and client*, including a means during the hearing for the attorney and the client to read and review all documents executed therein, and security sufficient to protect the safety of all participants and observers. . . .

(Emphasis added).  I note some ambiguity in the court rule.  Subsections (a) and (b) of the rule suggest that the trial court, at its discretion, may direct a videoconference hearing at any criminal proceeding.  Conversely, subsection (e)(1) intimates the authorization only to conduct arraignments, bail hearings, and trial settings by remote means.  Subsection (e)(2) resolves this ambiguity by clarifying all other proceedings must be

11

by personal appearance inside the courtroom unless by agreement of the parties, which agreement demands approval by the court.

The State argues that Stephen Bailey appeared in person at his resentencing hearing because presence by video monitor constitutes a personal appearance. It cites no authority for this argument. CrR 3.4 distinguishes between physical appearance in the courtroom and appearance remotely.

The State also suggests that the resentencing court possessed discretion to require Stephen Bailey's appearance by videoconference for security reasons. But then the State supplies no analysis as to the conditions that it claims supported the court's security measures. Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration. *Atkerson v. Department of Children, Youth & Families*, 29 Wn. App. 2d 711, 732 n.4, 542 P.3d 593, *review granted*, 3 Wn.3d 1001, 549 P.3d 113 (2024)). We lack sufficient information to assess the validity of precluding Bailey's personal appearance on the basis of security. Neither party contends that orders entered by the Washington Supreme Court or the Yakima County Superior Court because of the COVID-19 pandemic excused a personal appearance by Stephen Bailey.

The October 26, 2022 resentencing hearing violated CrR 3.4 because of the preclusion of Stephen Bailey from the courtroom. The hearing disregarded the rule for two other reasons, both in breach of CrR 3.4(e)(3). The technology did not allow all participants to be heard. Since the superior court could not hear witness Rosa Botella, we

12

presume Bailey could also not hear her. The videoconference facilities also did not afford a breakout room for confidential communications between Bailey and his counsel during the hearing. The rule does not excuse a remote hearing by the possibility of counsel being able to confer with his client in the jail even assuming the conference occurs before the sentencing court's ruling.

*Issue 2: Whether the resentencing procedure infringed on Stephen Bailey's constitutional right to physical presence inside the courtroom?*

*Answer 2: Yes.*

I move to the state and federal constitutions. Criminally accused persons have a constitutional right to be present at all critical stages of court proceedings. U.S. CONST. amend. VI; WASH. CONST. art. I, sec. 22; *State v. Jones*, 185 Wn.2d 412, 426, 372 P.3d 755 (2016). The Washington constitution declares, in part:

> In criminal prosecutions the accused shall have the right to appear
> and defend in person, or by counsel . . . .

This right extends to a resentencing hearing. *State v. Ramos*, 171 Wn.2d 46, 48, 246 P.3d 811 (2011) (per curiam); *State v. Rupe*, 108 Wn.2d 734, 743, 743 P.2d 210 (1987). Due process requires the presence of the accused at all proceedings, including sentencing. *Whipple v. Smith*, 33 Wn.2d 615, 618, 206 P.2d 510 (1949); U.S. CONST. amend. XIV, sec. 1; WASH. CONST. art. I, sec. 3. The court may conduct a hearing without the presence of the defendant only if the hearing entails a ministerial correction. *State v.*

*Ramos*, 171 Wn.2d 46, 48 (2011). When a trial court exercises its discretion as to the length of a sentence, the hearing is not merely ministerial. *State v. Ramos*, 171 Wn.2d 46, 48-49 (2011).

Stephen Bailey never agreed to appear by videoconference. Instead, he objected to the remote appearance. The hearing was not ministerial.

The majority refuses to entertain Stephen Bailey's claim that the remote hearing breached Bailey's Sixth Amendment right to be physically present on the excuse that Bailey failed to develop his argument. In its refusal, the majority fails to note that Stephen Bailey devoted four pages of his opening brief to amplifying his constitutional argument. He cited to the Sixth Amendment to the United States Constitution, article 1, section 22 of the Washington Constitution, and the following cases: *State v. Ramos*, 171 Wn.2d 46, 48-49, 246 P.3d 811 (2011); *State v. Irby*, 170 Wn.2d 874, 880-81, 246 P.3d 796 (2011); and *State v. DeWeese*, 117 Wn.2d 369, 381, 816 P.2d 1 (1991). The decisions hold that an accused possessed a constitutional right to be present in court at any critical stage of the trial. *State v. Ramos* rules that this right to be present extends to a resentencing hearing. One wonders what more the majority wishes for Bailey to write in order to enforce his constitutional rights.

The majority cites the principle I previously cited when I mentioned the State's failure to substantiate the need for security when barring Stephen Bailey from the courtroom. According to this principle, passing treatment of an issue or lack of reasoned

argument is insufficient to merit judicial consideration. *Atkerson v. Department of Children, Youth & Families*, 29 Wn. App. 2d 711, 732 n.4, 542 P.3d 593 (2024). I cited the principle because of the lack of any facts as to the need for security then unavailable, let alone any citation to a decision outlining when security concerns may justify a video conference sentencing hearing. As to the denial of Stephen Bailey's constitutional right to appear in person, the facts need no further development. Bailey cited ample authority to justify his legal position.

Assuming the majority demands that Stephen Bailey forward a case announcing that a videoconference hearing breaches the right to appear in person, the majority unfairly imposes this burden on Bailey. The employment of remote hearings is a recent development. One does not expect Washington cases, let alone cases from other jurisdictions, to address remote hearings. Bailey stated and supported by case citation the black letter rule that he has a right to a physical presence in the courtroom during resentencing. The Washington Constitution grants him the right to appear in person. Commonsense insists that appearing remotely by videoconference does not constitute appearing in person. In our court division practice, we distinguish between an attorney appearing by Zoom and appearing in person. The attorney appears in person when his or her corporeal existence walks into the courtroom and stands at the podium, not when the attorney shows on the screen with the attended limitations and inadequacies of technology.

15

The majority insists that Stephen Bailey holds the burden to show a constitutional violation. He has done so solely by citing to the federal and state constitutions. We may rule in his favor solely on the language of the constitutions.

If the State believes an exception to this constitutional right exists for a Zoom hearing, the State should carry the burden of citing decisions showing the presence of the exemption. The State fails to even argue against Bailey's Sixth Amendment claim other than to assert the lack of prejudice.

Some foreign decisions address remote hearings during the recent global pandemic. In *Stewart v. State*, 2022-KA-00107-SCT, 378 So. 3d 379 (Miss. 2024), the reviewing court noted that the trial judge faced unprecedented circumstances that led to Christopher Stewart's virtual presence at the hearing—namely, the COVID-19 global pandemic. The court denied a constitutional challenge to the videoconference hearing, but cautioned not to always equate appearing by videoconference with appearing in person.

In *Vazquez Diaz v. Commonwealth*, 487 Mass. 336, 167 N.E.3d 822 (2021), John Vazquez Diaz filed a motion to suppress evidence and a hearing on the motion was scheduled to take place on May 4, 2020. The trial court postponed the motion hearing because of the COVID pandemic, but ordered that the later hearing be conducted by Zoom. Vazquez Diaz objected to a hearing by Zoom. In the alternative, he moved for a continuance of the hearing until a time when the pandemic waned. The trial court

overruled the objection to a Zoom hearing and denied the motion for a continuance. On appeal, the Massachusetts Supreme Court affirmed the denial of the request to appear in person because of the significant government interest in combatting the COVID virus. Nevertheless, the court noted that importance of a defendant being able to directly communicate with their counsel during a hearing, although counsel and the client could confer in a breakout Zoom room. In part because a Zoom hearing differs from an in-person hearing, the court reversed the trial court's refusal to grant a continuance of the motion hearing.

*Vazquez Diaz v. Commonwealth* suggests the government must establish a significant governmental interest in order to justify a remote appearance of the defendant. The decision further suggests that the State bears the burden of showing a justification for relegating the defendant to a video appearance, rather than the defendant bearing a burden to show a violation of the right to appear. *Vazquez Diaz v. Commonwealth*, 487 Mass. 336, 342-43, 352-54 (2021).

Darren Hughes suffered a more egregious violation of his right to appear in person as reported in *Hughes v. State*, 691 S.W.3d 504 (Tex. Crim. App. 2024). When Hughes violated the terms of community supervision by committing forgery, the State moved to adjudicate defendant's guilt of tampering with a governmental record, which had been deferred when he pled guilty without an agreed recommendation to punishment and was placed on community supervision for three years. At the adjudication hearing, the court

required Hughes to appear by teleconference and muted him. The appellate court

reversed based on a denial of the due process right to appear in person. In doing so, the

court emphasized the muting of the microphone and the hearing entailing a motion to

adjudicate guilt. The court wrote, however:

> Ordinarily, when all of the parties are physically present, a
> defendant's disruptions would earn rebukes and orders to be quiet, such as
> those that [Darren Hughes] twice earned over the Zoom teleconference
> without being muted. The difference however is that in the ordinary case a
> defendant that is told to be quiet would be physically next to defense
> counsel and could have quietly talked to counsel or poked and prodded
> counsel, passed notes, or otherwise indicated to counsel that he wanted to
> talk. Even a defendant that must be bound and gagged can still find a way
> to make his desire to talk to counsel known.

*Hughes v. State*, 691 S.W.3d 504, 522 (Tex. Crim. App. 2024).

This court earlier reviewed the use of videoconferencing during a trial in the

context of the Sixth Amendment's right to confront witnesses. *State v. Sweidan*, 13 Wn.

App. 2d 53, 461 P.3d 378 (2020). Some of the same concerns underlie both the right to

face witnesses and the right to appear in person at a hearing. In the first instance, the

adjudicator should be able to see the full demeanor of the witness. In the second

instance, the sentencing court should hear directly from and witness the demeanor of the

offender.

The United States Supreme Court and the Washington Supreme Court have held

that a witness may testify by remote technology only if (1) excusing the presence of the

witness necessarily furthers an important public policy, and (2) the procedure otherwise

assures the reliability of the testimony. *Maryland v. Craig*, 497 U.S. 836, 850, 110 S. Ct.

3157, 111 L. Ed. 2d 666 (1990); *State v. Sweidan*, 13 Wn. App. 2d 53, 65, 461 P.3d 378

(2020). The United States Supreme Court, in *Maryland v. Craig*, 497 U.S. 836, 850

(1990), warned about routinely employing videoconference testimony. Technological

advances in the courtroom cannot come at the expense of the basic individual rights and

freedoms secured by our constitutions. *State v. Sweidan*, 13 Wn. App. 2d 53, 65 (2020);

*Harrell v. State*, 709 So. 2d 1364, 1372 (Fla. 1998). The electronic medium

compromises the presentation of a case. *State v. Sweidan*, 13 Wn. App. 2d 53, 65 (2020);

*Commonwealth v. Atkinson*, 987 A.2d 743, 751 (Pa. Super. Ct. 2009).

Contrary to the majority's assertion, a reasoned response by this court to Stephen

Bailey's right to appear assignment of error does not show favoritism. If any partisanship

prevails in this appeal, the favoritism extends to ruling in favor of the State despite the

State providing no argument that the remote hearing conformed to Bailey's constitutional

rights. Additionally, the majority's failure to review Bailey's Sixth Amendment

contention constitutes a rush to judgment, a belittling of the constitutional rights of

offenders, and a shirking of this court's duty to enforce constitutional rights. Stephen

Bailey adequately presented his argument, and he deserves a full evaluation of his

assignment of error.

Assuming Bailey's counsel failed to sufficiently analyze the Sixth Amendment's

interaction with videoconference hearings, the court should not punish Bailey for the

neglect of his counsel or refuse to enforce Bailey's constitutional rights. Although this court needs no additional briefing on the subject, the majority could also direct both parties to further brief the implications of a resentencing hearing by remote technology. More importantly, this court routinely performs additional briefing to supplement the briefing of counsel. Each judge has two law clerks and the court as a whole has three staff attorneys to perform this role. Judges can also perform briefing.

"The constitution is a solemn mandate by the people themselves, directed to the various branches of the government, and we would be derelict in our duty if we permitted such a mandate to be circumvented, regardless of our personal desires, no matter how expedient such circumvention might appear at the time." *State ex rel. Troy v. Yelle*, 27 Wn.2d 99, 102, 176 P.2d 459 (1947). Courts possess a sacred duty to safeguard the constitutional rights of her citizens. *Howell v. Cooper*, 290 N.C. App. 287, 292, 892 S.E.2d 445 (2023), *review granted,* 900 S.E.2d 928 (N.C. 2024). A court must enforce the provisions of the state constitution and may not lightly disregard or blink at a clear constitutional mandate. *Lacy v. City & County of San Francisco*, 94 Cal. App. 5th 238, 246, 312 Cal. Rptr. 3d 391 (2023).

*Issue 3: Whether the breach of Stephen Bailey's rights under CrR 3.4 and the violation of his constitutional right to be present constituted harmless error?*

*Answer 3: No.*

The resentencing hearing procedure contravened the strictures of CrR 3.4 and contravened Stephen Bailey's Sixth Amendment rights to be present. This ruling does not necessarily lead to a reversal of the resentencing judgment. I must also determine whether the violation of Stephen Bailey's rights at the resentencing hearing formed reversible error.

An error in a trial does not merit reversal unless the error prejudiced the defendant. *State v. Grenning*, 169 Wn.2d 47, 57, 234 P.3d 169 (2010); *State v. Cunningham*, 93 Wn.2d 823, 831, 613 P.2d 1139 (1980). A violation of the right to be present is subject to harmless error analysis. *Rushen v. Spain*, 464 U.S. 114, 117-18, 104 S. Ct. 453, 78 L. Ed. 2d 267 (1983); *State v. Irby*, 170 Wn.2d 874, 885, 246 P.3d 796 (2011). A violation of a court rule is generally not considered constitutional error, and we instead analyze whether, without the error, the outcome of the trial would have been materially affected. *State v. Grenning*, 169 Wn.2d 47, 58 (2010). If the error rises to constitutional magnitude, we apply the harmless beyond a reasonable doubt standard. *State v. Nist*, 77 Wn.2d 227, 234, 461 P.2d 322 (1969). Since the remote hearing here violated both rulatory and constitutional rights, I only apply the higher standard imposed on the State, that being the constitutional harmless beyond a reasonable doubt criterion.

On the one hand, Stephen Bailey agrees that he participated in the hearing and conferred in a limited manner with his attorney, but he argues that he lacked the benefit of consulting with his attorney throughout the proceeding. Either counsel or Bailey

21

may have wanted to share information with the other but then later forgot when communicating face to face. When Bailey objected to his remote appearance, the trial court should have arranged for additional security or rescheduled the hearing to allow for sufficient security. According to Bailey, his lack of a physical presence in the courtroom may have unintentionally biased the resentencing court. As the argument continues, this court cannot possibly discern if the resentencing court would have imposed the same sentence had Bailey been present and been able to instantaneously communicate with his counsel.

On the other hand, the State highlights that Stephen Bailey assigns no specific error to the resentencing court's ordering a videoconference hearing based on security reasons. The State emphasizes that Bailey elected to proceed by videoconference, rather than requesting alternate measures.

According to the State, Stephen Bailey effectively participated throughout the resentencing hearing. Bailey sat in the local county jail, immediately adjacent to the courtroom. He saw and heard all participants. Defense counsel received written notes that Bailey had prepared for him. Counsel informed Bailey that he would go to the jail to speak with Bailey if Bailey so requested. Bailey acknowledged that he understood this direction. Bailey demonstrated his ability and willingness to exercise the right to speak with counsel when he interrupted the proceedings to meet with his attorney privately. The resentencing court, as argued by the State, listened to Bailey's evidence of

22

rehabilitation. The court allowed Bailey uninterrupted allocution before the court announced the sentence.

Before continuing with the State's contentions, I correct some of the State's assertions. The record does not confirm that defense counsel received notes that Stephen Bailey prepared for his attorney. After the resentencing court's ruling, counsel mentioned to the court that he had failed to forward two of Bailey's requested contentions, which may suggest counsel did not receive the list. Any acknowledgement by Bailey of his right to confer with counsel in the jail during the hearing was a perfunctory and lukewarm recognition. When the State writes that Bailey demonstrated his ability and willingness to exercise the right to speak with counsel when he interrupted the proceedings to meet with his attorney privately, the State omits the fact that Bailey did so only after the court's ruling. The State also overlooks that Bailey did not initially interrupt the hearing to meet with his attorney, but rather to argue with the court. The court suggested to Bailey that he confer with counsel only after Bailey's counsel repeatedly directed him to remain quiet and the court informed Bailey that it would no longer entertain argument.

The State highlights the enhanced quality of videoconference equipment and the difficulties resulting from the pandemic and staffing shortages. The State neglects to mention that the resentencing court could not hear the testimony of the victim.

The State continues that, at the conclusion of the resentencing hearing, the trial

court reduced Stephen Bailey's sentence by one year and modified the no-contact order

from the duration of his lifetime to a period of twenty-five years. The resentencing court

possessed no obligation to lessen the sentence, particularly since the offender score

remained at nine or above. In short, the State contends the record fails to show that, had

Bailey appeared in the courtroom, the resentencing court would have imposed a different

sentence.

Under a constitutional harmless error standard, this court presumes prejudice.

*State v. Anderson*, 19 Wn. App. 2d 556, 564, 497 P.3d 880 (2021). This court will

reverse unless the State persuades us beyond a reasonable doubt that the error did not

contribute to the verdict. *State v. Orn*, 197 Wn.2d 343, 359, 482 P.3d 913 (2021);

*State v. Romero-Ochoa*, 193 Wn.2d 341, 347, 440 P.3d 994 (2019). We place this

heavy burden on the State to deter conduct that undermines the principle of equal justice.

*State v. Jackson*, 195 Wn.2d 841, 856, 467 P.3d 97 (2020).

In order to discern the nature of the constitutional error during Stephen Bailey's

resentencing hearing, I review two recent Court of Appeals decisions, *State v. Bragg*,

28 Wn. App. 2d 497, 536 P.3d 1176 (2023), and *State v. Anderson*, 19 Wn. App. 2d 556,

497 P.3d 880 (2021). The decisions involve the right to counsel, not to the right to

appear in person. Nevertheless, I discern no reason to distinguish for purposes of

harmless error decisions involving the related rights. I glean important factors from each decision in order to weigh possible prejudice.

I first explore this court's ruling in *State v. Anderson*, 19 Wn. App. 2d 556 (2021). Deshawn Anderson assigned error to his inability to confer confidentially with his counsel during a resentencing hearing. Anderson attended the resentencing hearing via video from jail. His attorney appeared telephonically. The parties agreed to modify the judgment and sentence according to the three issues identified in an earlier appellate decision. When addressed by the court, Anderson confirmed he agreed with the modifications. This court agreed that the resentencing hearing procedure violated Deshawn Anderson's constitutional right to counsel.

Division Three of this court, in *State v. Anderson*, applied the constitutional harmless error standard. This court observed that the error occurred during a resentencing hearing. During that hearing, Deshawn Anderson received all of the requests he forwarded to the court. Therefore, the State proved harmless error beyond a reasonable doubt. We refused to reverse Anderson's resentencing.

Division One of this court addressed a defendant's appearance by videoconference in *State v. Bragg*, 28 Wn. App. 2d 497 (2023). A jury convicted Denver Bragg of three counts of assault in the first degree, drive-by shooting, attempting to elude law enforcement, and possession of a stolen firearm. Bragg argued on appeal that the trial court violated his right to confer with his attorney by requiring him to participate in all

25

nontrial hearings via Webex while his counsel appeared in the courtroom. Division One agreed.

Because of the fact-specific nature of our inquiry, I relate in detail the pretrial hearings in Denver Bragg's prosecution. After Bragg's arrest and incarceration, the superior court imposed bail at $750,000, which Bragg could not pay. The superior court granted numerous trial continuances at the request of the State and defense counsel. The hearings included a review hearing discussing a plea offer, a review hearing discussing collecting Bragg's DNA sample and Bragg's request to discharge his counsel, a review hearing discussing DNA evidence, and a final pretrial conference discussing the defense retaining a DNA expert. For all twenty pretrial proceedings, Bragg appeared on video via Webex from jail, while his counsel and the State appeared in person before the trial judge. On multiple occasions, Bragg expressed frustration with the pretrial proceedings and distrust of his counsel. During one hearing, defense counsel tried to withdraw due to allegedly irreconcilable conflicts over whether to delay the trial to secure an expert DNA witness. The court denied counsel's motion to withdraw.

On appeal, this court ruled that the trial court violated Denver Bragg's right to counsel by not providing guidance to Bragg and his counsel about how to confer privately during at least four nontrial proceedings and by placing an unreasonable expectation on Bragg to assert his rights. In so ruling, Division One followed *State v. Anderson* and deemed the denial of the right to confer as constituting manifest

constitutional error.  Division One went on to reject the notion that the videoconference

appearance constituted structural error, necessitating automatic reversal.  Nevertheless,

the court applied the constitutional harmless error standard and held that the State did not

carry its burden to show beyond a reasonable doubt that Bragg's inability to confer with

his counsel at several critical stage proceedings was harmless.  Thus, this court reversed

the convictions.

Division One of this court, in *State v. Bragg*, analyzed the following events.

During a hearing to discuss a plea offer, Bragg's counsel advised the court that Bragg

refused the State's plea offer of 271 months.  Counsel further advised the court that he

explained the offer to Bragg in a letter and that the State would not bargain further.

Counsel warned Bragg that, if he refused the plea offer and a jury found him guilty, he

faced a sentence of over 700 months based on his offender score and the consecutive

nature of serious violent offenses and firearm enhancements.  During this hearing,

defense counsel also discussed his "'tense relationship'" with Bragg but without

significant detail.  *State v. Bragg*, 28 Wn. App. 2d 497, 513 (2023).  The court asked

Bragg if he wished to address the court, and Bragg declined.  This court reasoned that, if

Bragg and his counsel had been able to conduct a confidential conversation during the

plea discussion about the severity of possible jail time, Bragg may have accepted the

offer.  The ability to confer with counsel in person, in close proximity, and with the

benefit of the court's presence may have induced Bragg to further confer with his counsel

regarding the plea offer. Acceptance of a plea offer would not have changed whether Bragg was incarcerated, but the ability to confer at that moment may have led to a significant reduction in the length of his sentence.

During another hearing, the parties discussed Denver Bragg's refusal to give a DNA sample. Bragg refused to submit to the swab test, arguing his DNA was already on file. Bragg also expressed distrust of his counsel, the prosecutor, and the corrections officers taking his sample. As part of this distrust, Bragg complained to the court that he had been trying to fire his counsel, but the court would not permit him. Bragg further argued that, per the court order to collect his DNA, the time frame for collection had expired. Bragg insisted that his attorney should have made this argument for him. Bragg argued with the court until it muted him. Division One reasoned that, if Bragg and his counsel could have conferred privately, the relationship between attorney and client may have improved and Bragg may have better understood the gravity of the DNA evidence.

At a third hearing, Denver Bragg's attorney moved to withdraw as counsel. Defense counsel told the court that he received DNA test results the day before, just one week before trial, and that he wanted an independent expert to review the results. Bragg insisted he did not need an expert and wanted to proceed to trial. Following a long colloquy with Bragg and his attorney about their relationship, the superior court told counsel that he could then have a conversation with Bragg about the DNA evidence, but the court never suggested that the conversation could happen privately. This reviewing

court reasoned that, had attorney and client then conferred privately, the attorney may have better explained the gravity of the DNA evidence and encouraged Bragg to either retain an expert or open a plea discussion.

During the last hearing, Denver Bragg's counsel expressed concerns about Bragg's competency to participate in his defense because he unequivocally insisted on trial the next week. He refused to retain experts. He erroneously believed the State's DNA evidence helped him. Bragg told the court that he interpreted the results of the DNA test as showing the complete opposite of what his attorney told him. This court reasoned that, with a private conversation with counsel, the attorney could have encouraged Bragg to agree to a continuance to retain an expert because of the gravity of the DNA results or to reconsider the State's plea offer.

In assessing prejudice, Division One, in *State v. Bragg*, contemplated reasonable possibilities, not probabilities. This court rejected the State's contention that Denver Bragg's frequent interruption of the trial court showed he understood he could have spoken to his attorney and knew how to engage in a private discussion with his counsel. The court also rejected the argument that a private conference would have accomplished nothing because of the strained relationship between Bragg and his counsel.

Based on *State v. Anderson* and *State v. Bragg*, and the unusual circumstances of this appeal, I conclude the State fails to show a lack of prejudice. Unlike in *State v. Anderson*, the trial court did not grant all of Stephen Bailey's requests. To the contrary,

the superior court denied Bailey's request to set an offender score of eight. The resentencing court also denied Bailey's argument that two 2000 convictions should be deemed same criminal conduct and one year should be deducted from his sentence because his 2003 rape conviction sentence was extended one year because of Bailey's methamphetamine possession conviction. The court rejected Bailey's request for a low-end sentence.

Stephen Bailey's defense counsel, probably because Bailey did not appear in person such that counsel could not simultaneously speak with his client, failed to forward two arguments until after the resentencing court's ruling. Without having researched the merits of those arguments, I initially deem one argument reasonable and fair. Assuming, as stated by Bailey, that his possession conviction extended his earlier rape conviction sentence by one year, his current sentence should be shortened by one year. We cannot rule out a reasonable possibility that Bailey's presence in the courtroom and an opportunity for a timely private consultation in the courtroom might have influenced counsel's strategy, the presentation of Bailey's case to the court, or otherwise impacted the outcome of sentencing hearing.

Stephen Bailey wanted to appear in person to impress the court with his change in attitude and behavior. Determining whether his personal appearance would improve the results of the hearing might be speculation. Some offenders may downgrade a chance of a lighter sentence by a personal attendance in court. But the opposite is

also true.  The State, in sum, contends the record fails to show that, had Bailey appeared

in the courtroom, the resentencing court would have imposed a different sentence.

Nevertheless, Bailey lacks any burden to establish that the outcome would have changed.

Instead, the State must show the contrary.  It has not done so.  I therefore dissent.

Fearing, J.

Fearing, J.